UNITED STATES of America, Plaintiff,

v.

A PARCEL OF LAND, BUILDINGS, APPURTENANCES, AND IMPROVEMENTS, KNOWN AS 92 BUENA VISTA AVE., RUMSON, NEW JERSEY, Defendant.

Civ. A. No. 89–1411.

United States District Court,
D. New Jersey.

June 1, 1990.

Neil R. Gallagher, Asst. U.S. Atty., Newark, N.J., for plaintiff.

James A. Plaisted, Walder, Sondak, Berkeley & Brogan, Roseland, N.J., for claimant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

The United States of America brings this action for the civil forfeiture of real property pursuant to 21 U.S.C. § 881. The property in question is a Parcel of Land, Buildings, Appurtenances and Improvements, known as 92 Buena Vista Avenue, Rumson, New Jersey (hereinafter the "premises"). The action was commenced by the filing of a Verified Complaint in April, 1989, which was immediately followed by a seizure of the premises. On June 15, 1989, Ms. Beth Ann Goodwin filed an Answer and Claim against the property.

Presently before the Court is a motion by the claimant, Ms. Goodwin, to dismiss the complaint, for summary judgment, and to compel discovery. Her motion for dismissal of the complaint is based upon the grounds that (1) the seizure of her home was unconstitutional, because there was no probable cause and no preseizure hearing; (2) the property is not subject to forfeiture, because Ms. Goodwin is an "innocent owner"; (3) the Verified Complaint was based, at least in part, on immunized testimony; (4) the government unduly delayed in the seizure and/or is barred by the statute of limitations; and (5) the government's refusal to engage in discovery justifies dismissal of this action. The government has opposed the claimant's motion on all grounds and has cross-moved for a stay on discovery and/or a stay of this action. I shall first address the arguments raised by the claimant, because a finding that this action should be dismissed would obviate the need to consider the government's motion for a stay. On the other hand, a finding that the government is entitled to a stay may only postpone (and not obviate) the need to consider the claimant's arguments in support of her motion, and I think the fairest approach is to consider claimant's arguments first.

### I. Constitutionality of the Seizure

The premises in question were seized after the complaint, verified by Special Agent Richard Giacobbe of the Drug Enforcement Administration, ("DEA"), was reviewed by this Court and a finding was made that probable cause existed for the seizure. The claimant asserts that the "seizure should be dissolved," because it was effected in violation of the United States Constitution since there was no probable cause for the seizure and no preseizure hearing. The parties have pointed out that there is no binding precedent to guide this Court on the issue of whether preseizure notice and a hearing are constitutionally required before a home is seized under 21 U.S.C. § 881, and further, that the Second and Eleventh Circuits have split on the issue. *See United States v. Property at 4492 S. Livonia Road, Livonia, New York*, 889 F.2d 1258, 1265 (2d Cir.1989), *reh'g denied*, 897 F.2d 659 (2d Cir.1990) (preseizure notice and hearing required), and *United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Ft. Lauderdale, Fl.*, 803 F.2d 625, 632 (11th Cir.1986) (no preseizure notice or hearing required).

However, there is no need for me to address this constitutional issue. "Various circuit courts have held that the illegal seizure of property, standing alone, will not

immunize that property from forfeiture, so long as impermissibly obtained evidence is not used in the forfeiture proceeding." *Real Property Located at 4492 S. Livonia Rd., supra,* at 1265 (citations omitted); *see also Application of Kingsley,* 802 F.2d 571, 578–579 & n. 9 (1st Cir.1986). Where an unconstitutional seizure occurs, the victim can bring a damages action against the offending officer "should he be able to show that the warrantless seizure was effected in bad faith and caused personal damage", *United States v. One 1978 Mercedes Benz, Four–Door Sedan,* 711 F.2d 1297, 1303 & n. 7 (5th Cir.1983), but it provides no basis for dismissing an action where the government demonstrates entitlement to forfeiture based upon permissible evidence. *See id.* at 1303; *see also United States v. One 1975 Pontiac Lemans, Etc.,* 621 F.2d 444, 450–51 (1st Cir. 1980) (same). I find that the instant complaint should not be dismissed, because the government has established, by permissible evidence, that probable cause exists to subject the premises to forfeiture.

■ Pursuant to the forfeiture statute at hand, all proceeds traceable to drug transactions are subject to forfeiture. 21 U.S.C. § 881(a)(6). In determining whether proceeds are so traceable, "[t]here is no need to tie the [property] to proceeds of a *particular identifiable* illicit drug transaction." *United States v. 1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1435 & n. 4 (9th Cir.1985) (emphasis in original). In addition, the government is only required to demonstrate that probable cause exists for property to be subject to forfeiture under 21 U.S.C. § 881. *United States v. Property Known as 6109 Grubb Road,* 886 F.2d 618, 621 (3d Cir.1989), *reh'g denied,* 890 F.2d 659, (3d Cir.1989). The burden then shifts to the claimant to show, by a preponderance of the evidence, that the property is not forfeitable. *See* 19 U.S.C. § 1615. *See also United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195–6 (3d Cir.1983); *United States v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983).

■ In assessing whether the government has sustained its burden of showing probable cause, inadmissible hearsay may be considered. *United States v. Miscellaneous Jewelry,* 667 F.Supp. 232, 238 (D.Md. 1987), *aff'd,* 889 F.2d 1317 (4th Cir.1989); *United States v. Yacht Named Tahuna, supra,* at 1283. In addition, probable cause merely requires that the available facts would "warrant a man of reasonable caution in the belief" that the property is subject to forfeiture; "it does not demand any showing that such a belief be correct or more likely true or false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (Rehnquist, J., plurality) (citations omitted); *see also United States v. Rickus,* 737 F.2d 360, 367 (3d Cir.1984) ("[p]robable cause deals with probabilities, not certainties"). In making a probable cause determination, the totality of the circumstances are considered. *See Rickus, supra,* at 367. "[A]ll that is required is that a court be able to look at the 'aggregate' of the facts and find reasonable grounds to believe that the property probably was derived from drug transactions." *United States v. Parcels of Land,* 903 F.2d 36 (1st Cir.1990).

■ I find that the government has demonstrated that probable cause exists to believe that the premises are traceable to drug transactions. On or about April 13, 1990, a Grand Jury sitting in the Southern District of Florida returned an indictment against Joseph A. Brenna, among others, for violations of 21 U.S.C. §§ 848 and 853 and for forfeiture of the property in question. *See* Affidavit of Neil R. Gallagher, Esq., filed May 4, 1990, ("Gallagher Aff. II"), and Exhibit A. The probable cause to indict Mr. Brenna for the drug offenses was derived independent of any information from the claimant, since the claimant disclaims any knowledge of Mr. Brenna's involvement in drug transactions. *See infra,* Section II. In addition, apart from the indictment, probable cause is established. In the Verified Complaint, DEA Agent Giacobbe attests that, to his knowledge, the following facts, among others, are true: (1) that the premises in question were pur-

chased by Ms. Goodwin with funds provided by Joseph A. Brenna; (2) that Mr. Brenna had been involved in a scheme to import marijuana into the United States from Columbia during the years 1982 through 1986; (3) that Mr. Brenna obtained $216,000.00 for the purchase of the premises from criminal acts involving importation, possession and distribution of controlled dangerous substances; (4) that on September 29, 1988, Mr. Brenna pled guilty to violating 31 U.S.C. § 5322 and 18 U.S.C. § 2 for failure to file a currency report for the transfer of $225,000, part of which was used to purchase the premises; and (5) that in December, 1986, Mr. Brenna paid $30,000.00 to a crew member smuggling marijuana in the premises. *See* Verified Complaint, ¶¶ 5–19. In addition, Mr. Giacobbe obtained information from a Mr. Joseph Mazacco, an individual cooperating with the government on a plea agreement, that Brenna used drug money to purchase the premises. *See* deposition of Mr. Giacobbe, taken June 27, 1989, at 75, 78–79, 143, (annexed as Exhibit A to Affidavit of James A. Plaisted, filed Sept. 1, 1989, ["Plaisted Aff."]).

In addition, Ms. Goodwin states in her verified petition that she lived with Joseph Brenna from approximately 1981 through 1987; that she maintained an intimate personal relationship with him during that time; and that he supported her and her children. *See* Verified Petition of Beth A. Goodwin, May 19, 1989, ("Goodwin Pet."), ¶ 1, annexed to Plaisted Aff. as Exhibit C. She further states that Mr. Brenna made a gift to her of the proceeds used to purchase the premises. *Id.*, ¶¶ 3, 8. As attested to by Agent Giacobbe in his deposition, an Internal Revenue Service Investigation revealed that Ms. Goodwin had no visible means of support from 1980 through at least 1985. *See* Giacobbe dep. at 85; *see also* Verified Complaint, ¶ 9. Neither she nor Mr. Brenna filed income tax returns for the years 1978 through 1985. *See* Certificates of Non–Record, annexed as Exhibits A and B to Neil R. Gallagher Aff., filed Oct. 5, 1989, ("Gallagher Aff. I"). Ms. Goodwin explains her failure to file tax returns by stating that she has not been shown to have had any income other than

that obtained from Mr. Brenna. *See* Claimant's Reply Brief at 9.

The government has also received testimony from Mr. Shaun Murphy, an accountant working out of the British Virgin Islands, who made investments on behalf of clients so that their real names would not be revealed. *See* deposition of Shaun Murphy, August 2, 1989, ("Murphy dep."), annexed to Gallagher Aff. I as Exhibit E, at 7, 11. In making investments for his clients, Mr. Murphy used code names. He thought Mr. Brenna's real name was either Joseph Crawford or Joseph Cavanaugh with his pseudonym being Joseph Smith. *Id.* at 7, 10, 11. Mr. Murphy had a large number of clients; he had approximately five hundred companies and managed funds or investments for about two hundred of those companies. *Id.* at 4–5. It was his business practice *not* to inquire of his clients as to the source of their funds, although many of his clients had given him funds in excess of one million dollars. *Id.* at 6, 16. It appears that he had a practice of picking up money in St. Thomas and taking it to Tortola in the British Virgin Islands. *Id.* at 11. He also had a practice of shredding all "wastepaper" from his transactions on a daily basis. *Id.* at 27.

As for his business with Mr. Brenna, between August and October, 1982, Mr. Brenna brought two cash deposits to Mr. Murphy in the amount of $250,000.00 and $220,000.00, the latter deposit being given to him in a bag. *See* Murphy dep. at p. 95, 98–9. Mr. Brenna instructed Mr. Murphy to wire $216,000.00 of this cash to Mason, Griffin and Pierson, a law firm in New Jersey, (Murphy dep., at 100), for purchase of the premises. *See* Claimant's Reply Brief at 1, 8. Mr. Murphy also wired about $89,000 up to New Jersey. *Id.* at 102. Mr. Brenna did not explain from where he got his cash and, as was his general business practice, Mr. Murphy made no inquiries. Murphy dep. at 6–7. "[A] large amount of cash 'is strong evidence that the money was furnished or intended to be furnished in exchange for drugs.'" *United States v. U.S. Currency $83,310,78*, 851 F.2d 1231, 1236 (9th Cir.1988); *see also,* for example,

*United States v. $55,518.05 in United States Currency, supra,* at 196 ("Golden's silence speaks ever so loudly. For most Americans, $55,518 is not casual pocket change which one leaves on the bureau at night").

In sum, (in addition to the indictment which itself establishes probable cause), DEA Agent Giacobbe received information that Mr. Brenna was involved in drug trafficking between 1982 and 1988; the premises were purchased by Ms. Goodwin with proceeds received from Mr. Brenna "as a gift"; the premises were purchased with cash wired from Mr. Murphy in the British Virgin Islands, whose business has been described above, to law offices in New Jersey; Mr. Brenna had deposited about $470,-000.00 in cash with Mr. Murphy under an alias name and without explaining the source of same; Ms. Goodwin lived with Mr. Brenna during the years 1982 through 1988 during which time he supported her and her children; and neither Ms. Goodwin nor Mr. Brenna filed tax returns during the years 1979 through 1985. I find that these facts provide sufficient basis for probable cause to believe that the premises were purchased with proceeds traceable to drug transactions. *Compare United States v. 1982 Yukon Delta Houseboat, supra,* 774 F.2d at 1435 ("[t]he above cited evidence certainly gives rise to a reasonable belief that Ray–May Corp. lacked a source of funds to purchase the houseboats itself, and that Parker used the income he derived from illegal narcotics transactions to purchase the houseboats, but arranged for Ray–May to front for him and to be the nominal owner"). Accordingly, since the government has demonstrated that it is entitled to forfeiture, it is immaterial whether or not the initial seizure was constitutional and I will not pass on that issue.

## II. Innocent Owner Defense

The claimant contends that the complaint should be dismissed, because she has adequately satisfied her burden of showing that the property is not forfeitable. She claims that she has an "innocent owner" defense to the forfeiture. She asserts that she had no knowledge that the funds used to purchase the premises were traceable to drug sales; that the premises were used to facilitate drug sales; or that Mr. Brenna had a record of violating any laws. Goodwin Pet., ¶ 11.

In support of her innocent owner defense, it appears that the claimant relies upon 21 U.S.C. § 881(a)(6), which provides, in pertinent part, that property subject to forfeiture includes:

.... (6) All moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled dangerous substance in violation of this subchapter, *all proceeds traceable to such an exchange,*[1] and all moneys, ... intended to be used to facilitate any violation of this subchapter, *except that no property shall be forfeited ... to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.*

21 U.S.C. § 881(a)(6) (emphasis supplied).[2]

The government contends that the claimant is not entitled to invoke the innocent owner defense, because all right, title and interest in the proceeds of the narcotics transactions passed to the United States at the time of the sale, (*see* 21 U.S.C. § 881(h)), and thus, the claimant never acquired an interest in the property. *See* Government's Supplemental Brief at 16. It appears that some courts have rejected such an application of the relation back

1. This reference to "all proceeds" clearly includes all types of property, including real and personal property. *See United States v. Premises Known as 8584 Old Brownsville Road,* 736 F.2d 1129, 1130 (6th Cir.1984); *United States v. Parcels of Land, supra,* at 47 (1st Cir., 1990).

2. A similar "innocent ownership" defense is set forth at subsection (a)(7) to this provision, which provides that real estate used to facilitate the commission of drug offenses is subject to forfeiture, "except that no property shall be forfeited under this paragraph, to the extent an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(7).

doctrine in deciding whether or not a claimant has an interest in property to have *standing* to object to the forfeiture. *See United States v. Miscellaneous Jewelry, supra,* at 249 and cases cited therein.[3] However, I believe there is a difference between the issue of whether a person has standing to object to a forfeiture and whether that forfeiture is permissible.[4]

▆ I find that the claimant cannot successfully invoke the "innocent owner" defense here, because she admits that she received the proceeds to purchase the premises as a *gift* from Mr. Brenna. More particularly, I find that where, as here, the government has demonstrated probable cause to believe that property is traceable to proceeds from drug transactions, the innocent owner defense may only be invoked by those who can demonstrate that they are bona fide *purchasers for value. Accord United States v. One Single Family Residence, Miami,* 683 F.Supp. 783, 788 (S.D.Fla.1988) ("the innocent owner exception to forfeiture under section 881 also protects bona fide *purchasers for value* ") (emphasis added).

In *One Single Family* residence, the court arrived at a similar conclusion after reviewing the legislative history behind the criminal and civil forfeiture provisions at 21 U.S.C. §§ 853(c) and 881. *See* 683 F.Supp. at 787. Also, the court took note that the typical case in which the innocent owner defense has been applied is where a person legitimately obtains ownership to property with untainted funds, and then the trafficker uses that property to facilitate his drug deals without the knowledge and consent of the owner. *See* 683 F.Supp. at 786. *See also United States v. One 107.9 A. Parcel of Land in Warren Tp.,* 898 F.2d 396, 397 (3d Cir.1990). In such a case, an innocent owner defense is neces-

sary, because otherwise a legitimate property interest of a third party would be forfeited to the government for reasons entirely beyond the owner's control. *See Property Known as 6109 Grubb Road, supra,* 886 F.2d at 624–25. However, the same equities do not apply where, as here, there is probable cause to believe that the property was purchased with proceeds from drug transactions and given to the third party as a *gift,* because no investment has been made by the claimant.

This finding is consistent with the language of the civil forfeiture statute. In particular, the "innocent owner defense" at issue provides that "no property shall be forfeited . . . to the extent of the interest of *an owner,* by reason of any act or omission . . . committed or omitted without the knowledge or consent of *that owner."* 21 U.S.C. § 881(a)(6) (emphasis supplied). This language implies that the acts or omissions giving rise to forfeiture must be committed *after* the third party acquires a legitimate ownership interest in the property. In addition, if the drug trafficker purchases property with drug proceeds and *thereafter* conveys it as a gift, there is no reason for the drug trafficker to have obtained the consent of the transferee, and there is no incentive for the transferee to inquire as to the legitimacy of the transaction since no investment is being made.

The rule I have enunciated above—that the innocent owner defense cannot be invoked by the recipient of a gift of drug proceeds—is also buttressed by the analogous criminal forfeiture statute, traditional legal precepts, and common sense. The "innocent owner" exception under the criminal forfeiture statute (which was codified after the exception had been in place under the civil forfeiture statute) protects only transferees who are bona fide purchasers

---

**3.** However, in *Miscellaneous Jewelry,* the court held that alleged heirs of property lacked standing to contest the forfeiture of the property which was traceable to and/or used to facilitate drug transactions. *See* 667 F.Supp. at 249.

**4.** The claimant has standing here, because, in addition to having legal title to the premises, she claims that she resided there for a number of years and treated the premises as her home. *Cf.*

*United States v. One Parcel of Real Estate at 5860 N. Bay Road,* 121 F.R.D. 439, 440 (S.D.Fla. 1988) ("possession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture"). But, for reasons discussed *infra,* she does not have a legitimate innocent owner defense.

for value. *See* 21 U.S.C. § 853(c). In addition, it is a traditional rule of law that those who do not have legal title to property cannot validly transfer it to others, and certain exceptions to this rule apply only where the transferee is a bona fide purchaser *for value*. *See, e.g.,* N.J.S.A. § 12A:2–403. Similarly, where fraudulent conveyances are made, bona fide purchasers for value may be protected, but recipients of gifts are not. *See, e.g.,* N.J.S.A. § 25:2–6. I simply do not believe that Congress intended for the innocent owner exception to permit a drug dealer to avoid the impact of the forfeiture statute by disbursing the proceeds from his drug transactions to "innocent" friends, family or other random recipients of the trafficker's benevolence.

Accordingly, I deny the claimant's motion for summary judgment to the extent it is based upon an "innocent owner" defense.[5]

### III. *The Immunity Agreement*

■ The claimant argues that this action should be dismissed, because the Verified Complaint was based, at least in part, on immunized testimony. I disagree. The claimant was granted use immunity for her testimony and not transactional immunity. *See* May 4, 1988 letter to Joel Kaplan, Esq., from Lynne W. Lamprecht, AUSA, annexed as page 2 to Exhibit A of Supplemental Plaisted Affidavit, filed Oct. 13, 1989; *see also* 18 U.S.C. § 6002. The government has adequately demonstrated, from other sources independent of Ms. Goodwin's testimony, that probable cause exists to support forfeiture of the premises. *See supra,* at Section I. Thus, I will not dismiss the Verified Complaint on the grounds that it is partly based upon immunized testimony.[6]

### IV. *Alleged Undue Delay*

The claimant next argues that the government's complaint is barred, because it unduly delayed in the seizure in violation of her due process rights. The claimant argues that the government unduly delayed between the time at which the alleged criminal events occurred and the seizure of the property. The government responds that there can be no due process concerns, because forfeiture proceedings were instituted before the seizure and the seizure was instituted immediately thereafter.

To the extent that the claimant is arguing that the warrant authorizing the seizure was based upon "stale" information, her arguments lack merit. As explained by the court in *United States v. One 1978 Mercedes Benz, supra,* at 1301–02, "the passage of time between the occurrence of the facts giving rise to probable cause and the occurrence of the seizure is irrelevant" on the issue of statutory probable cause. *Mercedes Benz,* 711 F.2d at 1302.

■ Due process concerns are implicated where there is a delay between the seizure of the property and the postseizure filing

---

5. Although I have found probable cause for forfeiture, I will not grant summary judgment in favor of the government, because the government has not so moved, and the claimant can still defeat the forfeiture by demonstrating, by a preponderance of the evidence, that the premises were not purchased with proceeds from drug trafficking.

6. The government has made the additional argument that it could use the testimony at issue, because this is not a criminal proceeding but a civil proceeding against the property. *See United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1218 (10th Cir.1986). Various courts have permitted the use of immunized testimony in civil cases, even where the civil suit was somewhat penal in nature. *See, e.g., Childs v. Schlitz,* 556 F.2d 1178, 1179 (4th Cir.1977) (li-

cense revocation proceedings); *United States v. Kates,* 419 F.Supp. 846, 857–58 (E.D.Pa.1976) (civil fraud action). However, in *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Court held that evidence seized in violation of the Fourth and Fourteenth Amendments could *not* be used in civil forfeiture proceedings, because such proceedings are quasi-criminal in nature. *See* 380 U.S. at 700, 85 S.Ct. at 1250. Although it appears that, in light of the *Plymouth Sedan* case, Ms. Goodwin's immunized testimony could not be used in this civil forfeiture proceeding, I need not dismiss the Verified Complaint, because, as discussed above, there is an independent basis to provide probable cause to forfeit the premises apart from Ms. Goodwin's testimony.

of a judicial forfeiture action. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars in U.S. Currency*, 461 U.S. 555, 563, 103 S.Ct. 2005, 2011, 76 L.Ed.2d 143 (1983) (standards used to determine whether right to speedy trial is violated are applicable in determining whether due process concerns arise as to delay between *seizure of the property and institution of forfeiture action*) (18-month delay held permissible). Each of the cases relied upon by the claimant in support of her due process claim involved delays between the seizure of property and institution of forfeiture proceedings. *See* Claimant's Brief at 22, *citing Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *United States v. U.S. Treasury Bills Totalling $160,916.25*, 750 F.2d 900 (11th Cir. 1985), and *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112 (1st Cir.1975). Due process concerns arise in such a situation, because a property owner is entitled to be heard at a meaningful time after the deprivation of property that is caused by a seizure. *See United States v. 8,850, supra*, 461 U.S. at 562, 103 S.Ct. at 2010. Notably, there has been no real deprivation in this case, because Ms. Goodwin has been permitted to continue to reside at the premises under an arrangement with the government. *See* Occupancy Agreement, Gallagher Aff. II, Exhibit D.

Moreover, there is no dispute that this forfeiture proceeding was instituted before the seizure. The claimant was afforded the opportunity to contest the forfeiture and engage in discovery shortly after the seizure. Thus, under the cases cited by the claimant, no due process concerns are implicated. To the extent there was any delay between the events giving rise to the forfeiture and the institution of these proceedings, the statute of limitations governs.

## V. *Statute of Limitations*

■ Claimant argues that this action is barred by the applicable statute of limitations. However, I find no cogent reason to distinguish this case from *United States v. $116,000 in U.S. Currency*, 721 F.Supp.

701 (D.N.J.1989). In that case, Judge Wolin applied the statute of limitations set forth under the customs laws to actions brought under 19 U.S.C. § 1621. The customs laws require that the suit or action be "commenced within five years after the time when the alleged offense was *discovered.*" *Id.*, at 703, *citing* 19 U.S.C. § 1621 (emphasis added). Although Judge Wolin was concerned with the statute of limitations under Section 1955(d) of Title 18, and here I am concerned with Section 881(a) of Title 21, both of these sections contain similar language incorporating the customs laws in general. The claimant argues that the government became aware of the events giving rise to this action in 1986 and thus, her motion to dismiss the complaint on statute of limitations grounds is denied.

## VI. *Discovery Issues*

■ Lastly, the claimant argues that the government's refusal to engage in discovery justifies dismissal of the action. I disagree. However egregious a failure to abide by the discovery rules may be, the court is obliged to consider the appropriateness of alternative sanctions; dismissal is a drastic sanction, reserved for drastic cases, and should only be ordered where no lesser sanction is adequate. *See Poulis v. State Farm and Fire Casualty Co.*, 747 F.2d 863, 867–68 (3d Cir.1984).

Further, I do not find that plaintiff's alleged interference with discovery warrants sanctions. The claimant is primarily complaining that the government has not permitted discovery with respect to statements made by, and it has not permitted the deposition of, Joseph Mazacco. Mr. Mazacco is the government's chief informant in connection with what is now a pending criminal case. Thus, the government's refusal to permit discovery was not based upon any dilatoriness, willfulness or bad faith, but upon its concern over the outcome of criminal proceedings. Accordingly, the claimant's motion for dismissal of the Verified Complaint on the grounds that the government has not engaged in appropriate discovery is hereby denied.

## VII. *Government's Motion for a Stay*

 The government has moved for a stay of these proceedings pending trial of a criminal action in the Southern District of Florida pursuant to 21 U.S.C. 881(i). This section provides that "[t]he filing of an indictment alleging a violation of this subchapter ... which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding." 21 U.S.C. § 881(i). In deciding whether a stay is appropriate, the court should exercise its discretion and determine whether the hardships to the claimant are outweighed by the government's interest in avoiding civil discovery. *See United States v. Mellon Bank, N.A.*, 545 F.2d 869, 872–73 (3d Cir.1976).

I find that the balance weighs in favor of granting the government's request for a stay. The government has demonstrated good cause in support of its request; this is evidenced by the claimant's insistence for disclosure of the statements made by Mr. Mazacco, the government's informant, and the government's refusal to produce same. *See United States v. One Single Family Residence*, 710 F.Supp. 1351, 1352 (S.D.Fla.1989) (government satisfied its burden of demonstrating good cause by representing that "civil discovery would substantially interfere with and prejudice the prosecution of the criminal action, because civil discovery is substantially more comprehensive and wide-reaching than is criminal discovery"). It does not appear that the hardship to the claimant is severe, as she has been permitted to reside at the premises under an occupancy agreement. Although the claimant complains that she is not indicted and the government is not seeking to forfeit *her* interest in the property in the criminal proceedings, stays are appropriate whether or not the same parties are involved in the criminal and civil litigation, provided the actions concern related transactions. *See Larouche Campaign v. FBI*, 106 F.R.D. 500, 501 (D.Mass. 1985).

Accordingly, I shall grant the government's request for a stay of this civil proceeding pending trial of the criminal proceeding in the Southern District of Florida.

## VIII. *Conclusion*

For all the reasons set forth above, I deny the claimant's motion to dismiss the Verified Complaint and I grant the government's request for a stay of this case pending the trial in the criminal proceeding.