**UNITED STATES of America**

**v.**

**A PARCEL OF LAND, BUILDINGS, APPURTENANCES AND IMPROVEMENTS, KNOWN AS 92 BUENA VISTA AVENUE, RUMSON, NEW JERSEY and Beth Ann Goodwin, Claimant,**

**Beth Ann Goodwin, Appellant.**

**No. 90–5823.**

United States Court of Appeals, Third Circuit.

Argued April 2, 1991.

Decided June 17, 1991.

Rehearing Denied Aug. 13, 1991.

Michael Chertoff, U.S. Atty., Neil R. Gallagher (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

James A. Plaisted, (argued), Jeffrey A. Walder, Shalom D. Stone, Walder, Sondak, Berkeley & Brogan, Roseland, N.J., for appellant.

Before MANSMANN and HUTCHINSON, Circuit Judges, and O'NEILL, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal arising out of a civil forfeiture action, at least nominally civil in nature, we are presented with the very interesting question of whether the donee of monies, which the government has established probable cause to believe are traceable to drug transactions and which were used by the donee to purchase the premises that the government seeks to forfeit, may assert an innocent owner defense pursuant to 21 U.S.C. § 881(a)(6).[1] The district court found that the donee, Beth Ann Goodwin, could not assert such a defense because

---

* Honorable Thomas N. O'Neill, Jr. of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Section 881(a)(6) sets forth an innocent owner defense to "civil" forfeiture proceedings instituted under § 881. Section 853(c) also sets forth an innocent owner defense to criminal forfeitures under § 853, but in different language. As explained below, that difference can be significant. *See* Part III, at 101, *infra.*

she admitted that the money with which she bought the premises was a gift and therefore she was not a bona fide purchaser for value. We conclude that the district court erred as a matter of law because Goodwin was entitled to assert an innocent owner defense even though she was not a bona fide purchaser for value. Additionally, we shall address three other questions that have been certified by the district court pursuant to 28 U.S.C. § 1292(b).

## I.

Joseph Anthony Brenna and Beth Ann Goodwin shared a close personal relationship, akin to marriage, from the late 1970's until 1987. In early November of 1982, Brenna had approximately $216,000 transferred by wire to Goodwin's attorneys in New Jersey which Goodwin used to purchase the real property known as 92 Buena Vista Avenue, Rumson, New Jersey. Goodwin has held title to these premises and has resided there since 1982.

On April 3, 1989, the government filed a verified complaint pursuant to 21 U.S.C. § 881 *et seq.* seeking the seizure and forfeiture of the premises. The forfeiture proceeding was brought by the government as a consequence of the indictment of Joseph Anthony Brenna. The indictment alleged that from on or about January 1982, Brenna and others engaged in a continuing criminal enterprise in violation of 21 U.S.C. § 848, engaged in a conspiracy to import more than 1,000 kilograms of marijuana into the United States in violation of 21 U.S.C. § 963, and knowingly imported in excess of 1,000 kilograms of marijuana into the United States in violation of 21 U.S.C. § 952(a), and 18 U.S.C. § 2. On April 12, 1989, upon the *ex parte* application of the United States, the United States District Court for the District of New Jersey reviewed the verified complaint and determined that there was probable cause to believe that the premises were subject to forfeiture. The court thus issued a Summons and Warrant For Arrest and soon thereafter a United States Marshal seized the premises. Goodwin remains in possession of the premises pursuant to an Occupancy/Tenant Agreement with the United States Marshals Service.

On June 15, 1989, Goodwin filed an Answer, Claim and Counterclaim. On May 29, 1990, a hearing was held before the district court at which Goodwin moved to dismiss the complaint and seizure or, in the alternative, to grant summary judgment in her favor with respect to the United States' claim for forfeiture. The United States opposed the motion and crossmoved for a stay of the forfeiture proceedings. The district court denied Goodwin's motions and granted the United States' motion for a stay pending the criminal trial of Brenna and his co-defendants in the Southern District of Florida. The district court further ordered that if Brenna's trial were severed from the remaining defendants because of his fugitive status, Goodwin could move for relief from the stay after the trial of the remaining defendants. On July 13, 1990, the district court issued an order pursuant to 28 U.S.C. § 1292(b) certifying for appeal four questions:

(1) Whether the seizure of the home of the claimant, Beth Ann Goodwin, was unconstitutional because there was no preseizure hearing and, if so, whether the forfeiture proceedings involving the home should be dismissed as a result;

(2) Whether an innocent owner defense may be asserted by a person who is not a bona fide purchaser for value concerning a parcel of land where the government has established probable cause to believe that the parcel of land was purchased with monies traceable to drug proceeds;

(3) Whether the verified complaint in this action was based, in part, upon immunized testimony and if so, whether the forfeiture proceedings must be dismissed as a result; and

(4) Whether the United States' claims in this action are barred by the applicable statute of limitations and/or undue delay.

Because these certified questions involve questions of law, we shall exercise plenary review.

## II.

■ Goodwin asserts that the government's seizure of her home pursuant to 21 U.S.C. § 881 *et seq.* without pre-seizure notice and hearing is in violation of the United States Constitution. In support of this argument, Goodwin cites *United States v. Property at 4492 S. Livonia Road, Livonia, New York*, 889 F.2d 1258 (2d Cir.1989). In *South Livonia*, the Court of Appeals for the Second Circuit specifically considered whether 21 U.S.C. § 881(a)(7) was unconstitutionally applied in the context of the seizure of the claimant's home without notice and a hearing. Despite the fact that the court concluded that the claimant's interest in his home and the lack of exigent circumstance surrounding the seizure made the seizure unlawful, the court nevertheless determined that the forfeiture was not improper. Based on decisions from other courts of appeals, the Court of Appeals for the Second Circuit held that "the illegal seizure of property, standing alone, [does] not immunize that property from forfeiture, so long as impermissibly obtained evidence is not used in the forfeiture proceeding." *South Livonia*, 889 F.2d at 1265.

In keeping with the analysis used in *South Livonia*, we agree that the government's seizure of Goodwin's home pursuant to section 881 without notice and a hearing may have been unlawful. Nonetheless, the unlawfulness of the seizure does not require dismissal of the forfeiture proceedings provided that probable cause to seize the premises can be supported by untainted evidence. *United States v. One 1978 Mercedes Benz, Four–Door Sedan*, 711 F.2d 1297, 1302–03 (5th Cir.1983). Indeed, the indictment of Brenna, which establishes probable cause to believe that he was involved in a drug importation scheme, and other inferential evidence obtained independently of the illegal seizure suffice to establish that the district court had "reasonable grounds to believe that the property probably was derived from drug transactions." *United States v. Parcels of Land*, 903 F.2d 36, 39 (1st Cir.1990). Accordingly, the district court correctly declined to dismiss the forfeiture action, "because the government [did] establish[ ], by permissi-

ble evidence, that probable cause exist[ed] to subject the premises to forfeiture." *U.S. v. 92 Buena Vista Ave.*, 738 F.Supp. 854, 857 (D.N.J.1990).

## III.

■ Goodwin also argues that the district court erred in holding that Goodwin could not invoke an "innocent owner" defense pursuant to section 881(a)(6) because she was not a bona fide purchaser for value. Section 881(a)(6) provides for an innocent owner defense in the following language:

.... no property shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6). Goodwin admits that the money provided to her by Brenna to purchase the premises was a gift, but she asserts that she did not know that such money was the proceeds of drug transactions.

The district court articulated three specific bases in support of its conclusion that an innocent owner defense may only be invoked by a bona fide purchaser for value: (1) the criminal forfeiture statute, 21 U.S.C. § 853(c), explicitly protects only transferees who are bona fide purchasers for value; (2) those who do not have legal title to property may not validly transfer it to others except when the transferee is a bona fide purchaser for value; and (3) in the case of fraudulent conveyances, bona fide purchasers for value may be protected, but recipients of gifts are not. The district court further noted that from a common sense standpoint it was unlikely that Congress intended that a drug dealer should be able to distribute, with impunity, the proceeds from his drug transactions, even to innocent parties.

Despite the appeal of this analysis, the plain language of the innocent owner provision speaks only in terms of an "owner" and in no way limits the term "owner" to a bona fide purchaser for value. Further-

more, in *United States v. Parcel of Real Property Known as 6109 Grubb Road*, 886 F.2d 618 (3d Cir.1989), we determined, after reviewing the legislative history of section 881(a)(6), that "the term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." *Id.* at 625 n. 4 (quoting 1978 U.S.Code Cong. & Admin. News at 9522–23). Limiting the term "owner" to a bona fide purchaser for value and thereby excluding a recipient of a gift from being considered an "owner" would contravene the express legislative intent that we interpret "owner" broadly.

Moreover, as the district court pointed out, the criminal forfeiture statute, section 853, is explicitly limited to bona fide purchasers for value, while in section 881 Congress omitted such limiting language. We believe that such a difference was intended by Congress. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) ("if the statute is clear and unambiguous, that is the end of the matter, for the court ... must give effect to the unambiguously expressed intent of Congress"). In section 881, Congress chose to utilize the broad term "owner." Therefore, rather than reading into section 881 a requirement that an owner be a bona fide purchaser for value, we conclude that Congress intended to omit the bona fide purchaser for value requirement in that section. Consequently, we hold that Goodwin need not be a bona fide purchaser for value to raise an innocent owner defense pursuant to section 881(a)(6).

█ The government forcefully argues that Goodwin never acquired an ownership interest in the premises because of the relation back doctrine embodied in 21 U.S.C. § 881(h), which provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." Thus, the government asserts that Goodwin could never have been an "owner" because at the time of the drug transactions, all right, title, and inter-

est in the proceeds from the drug transactions vested in the United States. *See In the Case of One 1985 Nissan, 300 ZX*, 889 F.2d 1317 (4th Cir.1989).

█ We disagree with this analysis. Again we must read the plain language of the statute as Congress must have intended it by the words and structure it carefully chose. Section 881(h) vests title in the United States *in that property described in subsection (a)*. Subsection (a) sets forth that property which is subject to forfeiture and it also provides for "innocent owner" defenses.[2] Consequently, the property referred to in subsection (a) does *not* include property that has been exempted from forfeiture by means of an innocent owner defense. Logically then one must first ascertain whether the property at issue is not forfeitable because of an innocent owner defense before applying section 881(h). If the property is exempted from forfeiture pursuant to an innocent owner defense and therefore is not forfeitable property under subsection (a), then section 881(h) does not apply to such property that is not subject to forfeiture. Accordingly, the relation back doctrine would only be relevant in this case if a determination were made that Goodwin did not make out a valid innocent owner defense.

Moreover, to interpret section 881(h) in the manner suggested by the government would essentially serve to emasculate the innocent owner defense provided for in section 881(a)(6). No one obtaining property after the occurrence of the drug transaction-including a bona fide purchase for value—would be eligible to offer an innocent owner defense on his behalf. Judge Murnaghan, in his concurrence in *1985 Nissan*, gives an example which illustrates the overreaching effects that might result if the government's argument were accepted by us:

> If a drug dealer should buy a car from a perfectly reputable auto dealership with proceeds from drug sales, apparently, under the majority's opinion, the government could use civil forfeiture to take

2. Both sections 881(a)(6) and 881(a)(7) provide

for the use of "innocent owner" defenses.

away the money paid to the car dealer, even though the dealer was entirely unaware that he had sold the automobile to a drug dealer.

*1985 Nissan*, 889 F.2d at 1322. Accordingly, we will remand this matter to the district court to determine whether Goodwin was an innocent owner.

## IV.

■ In May, 1989, the United States immunized Goodwin and took her testimony concerning the criminal investigation of Brenna. In his deposition testimony, Special Agent Richard Giacobbe of the Drug Enforcement Administration, who verified the forfeiture complaint, admitted that Goodwin's immunized testimony was relied upon, in part, in preparing the complaint. Goodwin argues that the use of such testimony deprived her of her fifth amendment rights and therefore the complaint should be dismissed with prejudice.

The extent of immunity granted to Goodwin was set forth in a May 4, 1988, letter signed by Assistant United States Attorney Lynne W. Lamprecht. In the letter, the government agreed that pursuant to 18 U.S.C. § 6002 "no testimony or other information resulting from Ms. Goodwin's interview on May 5, 1988 (or any information directly or indirectly derived from such testimony or other information) may be used

against Ms. Goodwin *in any criminal case* except a prosecution for perjury, or for giving a false statement." (Emphasis added.)[3] The district court concluded from this language that Goodwin was granted use immunity for her testimony and not transactional immunity. Therefore, despite the fact that the complaint was based, in part, on immunized testimony, the district court ruled that because the government established probable cause from other independent sources, it would not dismiss the complaint.

The immunity granted pursuant to 18 U.S.C. § 6002 is, indeed, "use" immunity. *Tierney v. United States*, 409 U.S. 1232, 93 S.Ct. 17, 34 L.Ed.2d 37 (1972). In *United States v. Pellon*, 475 F.Supp 467, 479 (S.D. N.Y.1979), the court distinguished "use" immunity from "transactional" immunity:

The difference between transactional immunity and use immunity is that in the former, the witness is protected completely from prosecution for any offense about which he testifies. Use immunity is not as broad; it precludes only the Government's use of the testimony, and the witness may still be prosecuted if the prosecution can prove its case independently of the witness' own testimony.

*Id.* (citing *Kastigar v. United States*, 406 U.S. 441, 449–53, 92 S.Ct. 1653, 1658–61, 32 L.Ed.2d 212 (1972)).

---

**3.** For the purposes of our analysis, we shall assume, without deciding, that a civil forfeiture effected under section 881 constitutes a "criminal case" under the immunity statute, 18 U.S.C. § 6002. Obviously, if we were to decide that a section 881 forfeiture is not a criminal case, no more analysis would be required and upon that basis we would be able to affirm the district court's conclusion that the use of Goodwin's immunized testimony does not require that the forfeiture complaint be dismissed.

We note that there is caselaw supporting the argument that such a forfeiture does constitute a criminal case. In *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), the Supreme Court stated:

We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal.... The information, though technically a civil proceeding, is in substance and effect a criminal one.... As therefore, suits

for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi criminal nature, we think they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the constitution and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself.

*Id.; see also One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965) (citing *Boyd* for the proposition that a forfeiture proceeding is quasi-criminal in character with the same objectives of a criminal proceeding: to penalize one for committing a crime); and *United States v. Riverbend Farms, Inc.*, 847 F.2d 553 (9th Cir.1988) (quoting *United States v. Seifuddin*, 820 F.2d 1074, 1077 (9th Cir.1987) for the proposition that forfeiture statutes are criminal "only for the purposes of the fourth amendment search and seizure clause and the fifth amendment self-incrimination clause").

The district court concluded that the United States "adequately demonstrated, from other sources independent of Ms. Goodwin's testimony, that probable cause exists to support forfeiture of the premises." *92 Buena Vista*, 738 F.Supp. at 861. In support of its determination that there was an independent basis for a finding of probable cause, the district court set forth the following facts, among others, that were derived independently of Goodwin's testimony:

> On or about April 13, 1990, a Grand Jury sitting in the Southern District of Florida returned an indictment against Joseph A. Brenna, among others, for violations of 21 U.S.C. §§ 848 and 853 and for forfeiture of the property in question.... The probable cause to indict Mr. Brenna for the drug offenses was derived independent of any information from the claimant, since the claimant disclaims any knowledge of Mr. Brenna's involvement in drug transactions.... In addition, Mr. Giacobbe obtained information from a Mr. Joseph Mazacco, an individual cooperating with the government on a plea agreement, that Brenna used drug money to purchase the premises....

\*　　\*　　\*　　\*　　\*　　\*

In addition, Ms. Goodwin states *in her verified petition* that she lived with Joseph Brenna from approximately 1981 through 1987; that she maintained an intimate personal relationship with him during that time; and that he supported her and her children.... She further states that Mr. Brenna made a gift to her of the proceeds used to purchase the premises....

\*　　\*　　\*　　\*　　\*　　\*

The government has also received testimony from Mr. Shaun Murphy, an accountant working out of the British Virgin Islands, who made investments on behalf of clients so that their real names would not be revealed....

\*　　\*　　\*　　\*　　\*　　\*

As for his [Mr. Murphy's] business with Mr. Brenna, between August and October, 1982, Mr. Brenna brought two cash deposits to Mr. Murphy in the amount of $250,000.00 and $220,000.00, the latter deposit being given to him in a bag.... Mr. Brenna instructed Mr. Murphy to wire $216,000.00 of this cash to Mason, Griffin and Pierson, a law firm in New Jersey, ... for purchase of the premises.... Mr. Murphy also wired about $89,000 up to New Jersey.... Mr. Brenna did not explain from where he got his cash and, as was his general business practice, Mr. Murphy made no inquiries....

*92 Buena Vista*, 738 F.Supp. at 857–58 (emphasis added).

■ In determining whether proceeds are traceable to drug transactions, "[t]here is no need to tie the [property] to proceeds of a *particular identifiable* illicit drug transaction." *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435 n. 4 (9th Cir.1985) (emphasis in original). In determining whether probable cause exists for forfeiture, "all that is required is that a court be able to look at the 'aggregate' of the facts and find reasonable grounds to believe that the property probably was derived from drug transactions." *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir.1990). Based upon the information cited by the district court which was garnered independently of Goodwin's testimony, the district court correctly concluded that probable cause existed for the forfeiture of the property pursuant to 21 U.S.C. § 881(a)(6).

## V.

■ Finally, we must address the issue of whether the United States' claims are barred by the applicable statute of limitations or undue delay. It appears clear that the customs laws are intended to provide the relevant statute of limitations with respect to forfeiture proceedings brought pursuant to section 881. Section 881(d) provides:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from

the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; ....

21 U.S.C. § 881(d). Furthermore, the legislative history provides that "Subsection (d) of this section provides that forfeiture proceedings shall be in accord with the provisions of existing U.S. customs law." House Report No. 91–1444, Comprehensive Drug Abuse Prevention and Control Act of 1970, reprinted in 1970 *U.S.Code Cong. and Adm.News*, pp. 4566, 4624.

The applicable statute of limitations, 19 U.S.C. § 1621 of the customs laws, requires that the United States commence its forfeiture action against Goodwin "within five years after the time when the alleged offense was discovered." 19 U.S.C. § 1621. Accordingly, because the government became aware of the transactions giving rise to this action in 1986 and because the government instituted this forfeiture action within five years (1989), the statute of limitations does not bar this action.

Goodwin also claims that the forfeiture action is barred by undue delay. The only caselaw which we have been able to uncover involves undue delay between the time of the seizure of the property and the post-seizure filing of the forfeiture action. Consequently, because this forfeiture proceeding was brought prior to the seizure, such caselaw is inapposite. Here, Goodwin has been permitted to be heard "at a meaningful time after the deprivation of the property...." *92 Buena Vista*, 738 F.Supp. at 862. Moreover, Goodwin has not been wholly deprived of her property since she has been permitted to continue to reside at the premises in accordance with the terms of the occupancy agreement. Therefore, the district court correctly held that there was no undue delay that would warrant dismissal of this forfeiture proceeding.

## VI.

Accordingly, we will remand this case to the district court to reconsider Goodwin's motion for summary judgment and her motion to dismiss after determining whether Goodwin was an "innocent owner." We will, however, affirm the district court with respect to the other certified issues.