UNITED STATES of America, Plaintiff,

v.

The LEASEHOLD INTERESTS IN 118 AVENUE D, APARTMENT 2A; 170 Avenue D, Apartment 5F; 903 East 6th Street, Apartment 3C; 819 FDR Drive, Apartment 5C; 500 East Houston Street, Apartment 8F; 950 East 4th Walk, Apartment 3D; 55 Rutgers Street, Apartment 10A; New York, New York; and 155 Siegel Street, Apartment 3H; Brooklyn, New York, Defendants.

No. CV–90–3083 (ADS).

United States District Court, E.D. New York.

Nov. 30, 1990.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Jody Kasten and Michelle Weiner, Asst. U.S. Attys., for the U.S.

Michael Kennedy Lloyd, New York City, for intervenor-claimant to defendant 55 Rutgers Street, Apartment 10A, Brooklyn, N.Y.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

Pursuant to 21 U.S.C. § 881(i) and 18 U.S.C. § 981(g), the Government moves for a stay of this civil forfeiture proceeding pending the termination of the related criminal prosecution now before United States District Judge Carol Bagley Amon. For the reasons that follow, the motion is granted and this proceeding is stayed for all purposes pending final disposition of the criminal trial.

## I. FACTUAL BACKGROUND

Officers of the New York City Housing Authority Police Department ("NYCHPD") and the Federal Drug Enforcement Administration ("DEA"), undertook a joint investigation in 1989 and 1990 of a narcotics trafficking organization allegedly led by Elwin Bruno and Luis Ramos ("the Bruno/Ramos Organization"), which allegedly operated primarily in the area of the lower East Side of Manhattan. The Bruno/Ramos Organization is alleged to be part of a large scale narcotics distribution network, distributing mostly heroin. As a result of an ongoing criminal investigation utilizing telephone interceptions for a period of approximately three months, narcotics transactions were allegedly revealed, which included dealings between Bruno and confederates who operated out of the residences which are now the defendants in this *in rem* proceeding.

For the period of March 1990 through August 1990, the individuals associated with the Bruno/Ramos Organization were arrested. That criminal case was originally assigned to this Court, and thereafter reassigned to the Hon. Carol Bagley Amon upon her appointment as a United States District Judge (*see United States v. Ramos, et al.,* CR–90–426 [CBA] [E.D.N.Y.]). The criminal trial is presently scheduled to begin on March 4, 1991.

In this related civil forfeiture action, the Government alleges that the eight defendant properties were used by the criminal defendants to facilitate the sale, manufacture and distribution of controlled substances in violation of 21 U.S.C. § 841, which renders the properties liable to condemnation and forfeiture to the United States.

The Government originally moved by order to show cause, signed by this Court on September 5, 1990, for an order: (1) issuing a seizure warrant for the defendant properties *in rem;* and, (2) authorizing and directing the United States Marshal to execute the seizure warrant upon the defendant properties. At a hearing held on November 9, 1990, a stipulation agreeing to a stay of this forfeiture proceeding pending termination of the criminal case was entered into between the Government and the attorneys for claimants to four of the defendant properties, namely, 118 Avenue D, Apartment 2A; 170 Avenue D, Apartment 5F; 903

East 6th Street, Apartment 3C; and 500 East Houston Street, Apartment 8F, all located in the Borough of Manhattan, City of New York. Accordingly, as to those four properties, this proceeding is stayed pending resolution of the related criminal trial before Judge Amon.

As to two of the defendants, 819 FDR Drive, Apartment 5C, New York, New York and 155 Siegel Street, Apartment 3H, Brooklyn, New York, there have been defaults, and decrees of forfeiture and orders of delivery were rendered by this Court on November 17, 1990.

Ms. Debora Carrero, the claimant for and lessee of the remaining defendant, 55 Rutgers Street, Apartment 10A, New York, New York ("55 Rutgers"), appeared through counsel. Although she is not a defendant in the related criminal action, Jose Santiago, her boyfriend and father of her son, is a defendant, and is alleged to have conducted illegal narcotics activities in the apartment at issue.

The Court commenced a probable cause hearing on November 9, 1990 as to 55 Rutgers, which was then adjourned to November 16, 1990. Sometime after the November 9th hearing, but before November 16, 1990, the attorney for the claimant served a document request entitled, "Claimant's First Set of Requests to Plaintiff for the Production of Documents", consisting of fifteen items, including a request for cooperation agreements, the DEA case file, and Brinks' receipts for the monies confiscated.

On November 15, 1990, at the request of the claimant's counsel, the Court held a telephone conference with the parties, in which the claimant's counsel sought to compel production of the documents set forth in its demand for discovery for the hearing to be held the next day. In response, the Government stated that it could not produce the voluminous documents called for by the discovery request in such a short period of time. The Government also contended that it could not produce some of the documents requested because it might jeopardize or at least interfere with the trial of the related criminal action. Accordingly, the Government requested a stay of this proceeding as against 55 Rutgers. Since counsel for the claimant objected to such a stay, the Court thereafter directed the parties to brief the issue of a stay, and to appear for argument the following day, November 16, 1990, which argument was commenced on November 16, 1990 and was adjourned to November 23, 1990.[1]

## II. THE LAW

◼ The civil forfeiture statute provides that the filing of an indictment in a criminal action related to the civil forfeiture proceeding "*shall,* upon motion of the United States and for good cause shown" be stayed by the Court (21 U.S.C. § 881[i] [emphasis supplied]; *see also* 18 U.S.C. § 981[g] ["filing of an indictment ... related to a forfeiture proceeding ... shall, upon motion of the United States and for good cause shown, stay the forfeiture proceeding"] ). Thus, by the express terms of the statute, if a related criminal action is pending and the Government shows that good cause exists to stay the forfeiture proceeding, then the district court *must* grant a stay.

◼ In enacting section 881(i), Congress anticipated that compelling discovery in the context of a civil forfeiture proceeding might force the Government to prematurely disclose information in the related criminal proceeding that it would not otherwise have to do (*see* S.Rep. No. 225, 98th Cong., 2d Sess., 215 *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3398–99 [section 881(i) "provides for a stay of civil forfeiture proceedings when the government has commenced a criminal case that involves issues the same as or related to those on which the forfeiture action is based. Generally, the courts have been willing to grant such stays of civil forfeiture proceedings when the government has commenced a criminal action concerning

1. In this regard, the Court notes and appreciates the expediency with which both parties prepared and submitted thorough briefs on this issue.

the same acts that have given rise to the forfeiture"] [footnote omitted]).

 In making the determination of whether a stay under section 881(i) is appropriate under the circumstances, "the court should exercise its discretion and determine whether the hardships to the claimant are outweighed by the government's interest in avoiding civil discovery" (*United States v. A Parcel of Land, Buildings, Appurtenances, and Improvements Known as 92 Buena Vista Ave.*, 738 F.Supp. 854, 863 [D.N.J.1990], *certification for interlocutory appeal granted*, 742 F.Supp. 189 [D.N.J.1990]). Stated another way, the possible prejudice or hardship to the claimant is a factor that should be considered in determining whether the Government has established "good cause" to obtain a stay.

Although the statute is relatively new, some District Courts have found "good cause" to exist in civil forfeiture proceedings in the face of discovery demands and granted stays pending the conclusion of related criminal actions (*see, e.g., United States v. A Parcel of Land, Buildings, Appurtenances, and Improvements Known as 92 Buena Vista Ave.*, *supra*, 738 F.Supp. at p. 863 [stay granted since "good cause" shown by Government and hardship to claimant not "severe"]; *United States v. Premises and Real Property at 297 Hawley Street*, 727 F.Supp. 90, 91 [W.D.N.Y.1990] [stay is necessary to protect Government's criminal case from broad discovery demands in civil forfeiture case]; *United States v. One Single Family Residence at 2820 Taft Street*, 710 F.Supp. 1351, 1352 [S.D.Fla.1989] [Government met burden of showing "good cause" by alleging scope of civil discovery could interfere with related criminal prosecution]).

On the other hand, other courts have denied the Government's request for a stay of either discovery in particular or the entire action in general, based on a variety of reasons (*see, e.g., United States v. Premises Located at 207 West Washington Street, Athens, Ala.*, 732 F.Supp. 1128, 1131–32 [N.D.Ala.1990] [application for stay of civil forfeiture proceeding against property used for illegal gambling denied where property is already in Government's possession and, unlike 21 U.S.C. § 881(i), forfeiture statute for gambling did not expressly authorize a stay]; *United States v. One Parcel of Real Estate at 1303 Whitehead Street, Key West, Fla.*, 729 F.Supp. 98, 99–100 [S.D.Fla.1990] ["good cause" for stay not shown by Government's mere contention of "claimant's *possible* abuse of civil discovery" (emphasis supplied)]; *cf. United States v. All Monies and Other Property Contained in Any and All Accounts and Certificates in the Names of Banco Cafetero Int'l*, 107 F.R.D. 361, 364–67 [S.D.N.Y.1985] [stay not granted where criminal indictment had not yet been issued], *aff'd*, 797 F.2d 1154 [2d Cir.1986]).

At the outset, the Court notes that there appears to be no decision of the Second Circuit that addresses the specific issue of the appropriate standard to be used by a District Court to determine whether there is "good cause" to stay a proceeding under 21 U.S.C. § 881(i) pending disposition of a related criminal action. In this regard, the Court finds persuasive the reasoning in those cases that have granted stays, particularly since they are factually more similar to this case. Specifically, the Court finds *Whitehead, supra*, and *207 West Washington Street, supra*, distinguishable and, in any event, the Court expressly declines to follow the reasoning and standard set forth in *Whitehead*.

In *Whitehead*, the court found that the Government's mere speculation of possible civil discovery abuse by the claimant was not sufficient to show "good cause" within the meaning of 21 U.S.C. § 881[i] (*see* 729 F.Supp. at p. 99). Although it is not clear whether the Government was in possession of the property or not, the court went on to impose a stringent standard upon the Government in seeking a stay by analogizing the situation to a request for a preliminary injunction and required the Government to satisfy the traditional elements for an injunction in the Eleventh Circuit (*see* 729 F.Supp. at p. 100).

■ This Court is of the view that Congress did not intend to impose a strict standard such as that applicable in obtaining a preliminary injunction, considered to be drastic relief. The Court also finds significant that the *Whitehead* decision cited to no authority in enunciating that standard. Moreover, the only subsequent cases that have cited it favorably involved situations where an indictment had *not* yet been filed, and the claimants were either dispossessed from the defendant properties (*see, e.g., In re Ramu Corp.*, 903 F.2d 312 [5th Cir.1990]), or the properties were seized and sold, and the proceeds were deposited in the court registry (*see, e.g., United States v. One Parcel of Real Estate Located at 12525 Palm Road, North Miami, Dade County, Fla.*, 731 F.Supp. 1057 [S.D. Fla.1990]); situations where delay can invoke serious due process concerns (*see United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 [2d Cir.1986]). Finally, the Court notes that the similar cases decided subsequently failed to cite *Whitehead,* even though this is an area with a sparcity of case law (*see, e.g., United States v. A Parcel of Land, Buildings, Appurtenances, and Improvements Known as 92 Buena Vista Ave., supra,* 738 F.Supp. at p. 863).

■ Without adopting the *Whitehead* "preliminary injunction" standard, the Fifth Circuit in *In re Ramu, supra,* held that "[t]he government should at least be required to make a specific showing of the harm it will suffer without a stay and why other methods of protecting its interests are insufficient" (903 F.2d at p. 320). This Court is in accord with and adopts that approach. Specifically, in order to establish "good cause", the Government should be required to make some specific showing of potential harm if the requested discovery is disclosed without being compelled to compromise the prosecution of the ongoing related criminal proceeding. Mere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery, however, will not avail on a motion for a stay (*see* D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 10.02, at p. 10–7

[1990]). Additionally, even though the Government makes a specific showing of harm or prejudice, in making the ultimate determination of whether "good cause" exists, the Court should also consider and weigh the possible resultant prejudice or hardship to the claimant, if any (*see United States v. A Parcel of Land, Buildings, Appurtenances, and Improvements Known as 92 Buena Vista Ave., supra,* 738 F.Supp. at p. 863; *cf. United States v. All Monies and Other Property Contained in Any and All Accounts and Certificates in the Names of Banco Cafetero Int'l, supra,* 107 F.R.D. at p. 365 n. 7 [in *dicta,* noting similar standard that should apply to determine "good cause"]). In this Court's view, such an approach serves the interests of both parties and would appear to comport with the goals of Congress.

## III. DISCUSSION

In support of this application for a stay, the Government submitted an affirmation by Eric Corngold, Esq., the Assistant United States Attorney ("AUSA") responsible for the prosecution of *United States v. Ramos, et al.,* CR–90–426 (CBA). In relevant part, AUSA Corngold states the following:

> "Based upon my review of the transcript of the proceedings held in this action on Friday, November 9, 1990 and discovery requested by claimant Debora Carrero, I believe that continuing the civil forfeiture proceeding and responding to civil discovery requests will jeopardize the related criminal trial. In particular, Debora Carreo [sic] is seeking testimony and discovery regarding the circumstances that lead to the indictment of Jose Santiago, the government's intentions with regard to any future arrests or indictments, and information about any possible cooperating witnesses" (Corngold Affirmation ¶ 6).

In opposition, the claimant relies primarily on *Whitehead,* which denied the Government's application for a stay. According to counsel for the claimant, Debora Carrero "will be forced to labor under a cloud of uncertainty for at least many months, pos-

sibly, more than a year" if a stay is granted (Claimant's Reply Memorandum of Law in Opposition to Plaintiff's Motion at p. 6).

Considering the totality of the circumstances, as well as the probable cause hearing which began on November 9, 1990, the Court finds that the Government's application for a stay is proper. For the reasons that follow, the Court finds that the Government has sufficiently established "good cause", thus entitling it to a stay of this proceeding under 21 U.S.C. § 881(i), pending disposition of the related criminal action.

a) The Government's application is based not on speculation of abusive discovery, but rather on discovery requests actually made by the claimant Debora Carrero.

■ The Government is not merely speculating that the claimant might abuse the broad discovery process available in civil cases. Rather, after the probable cause hearing actually commenced on November 9, 1990, the claimant in fact served her "first" discovery request upon the Government. Only then did the Government request this stay. Additionally, AUSA Corngold points to specific items of discovery which, if disclosed in this proceeding, "will jeopardize the related criminal trial" (Corngold Affirmation ¶ 6).

Counsel's discovery requests are so overbroad as to compel disclosure of evidence that will be available and adduced in the criminal case. This discovery request, if complied with by the Government in this forfeiture case, may impede the Government's prosecution of that case in chief (*see* Corngold Affirmation ¶ 6). According to the AUSA assigned to prosecute the criminal case, disclosure of the information sought could possibly compromise confidential law enforcement information, the Government's intentions as to future arrests and/or indictments, as well as the identity of cooperating witnesses not yet required to be disclosed (*see* Corngold Affirmation ¶ 6; *see also United States v. Premises and Real Property at 297 Hawley, supra*, 727 F.Supp. at p. 91). Even

though at oral argument on November 23, 1990 counsel for the claimant stated that he would narrow his discovery request, the Court notes he did not specifically set forth how or to what extent he would agree to tailor it. In any event, any agreement to limit discovery would not materially alter the Court's analysis and conclusion that a stay is warranted (*see United States v. Premises and Real Property at 297 Hawley Street, supra*, 727 F.Supp. at p. 91), since such an agreement may hinder the claimant in this proceeding.

In sum, the Court finds that the Government has made a sufficient particular showing of potential harm or prejudice to the criminal trial in the event these discovery requests are complied with.

b) The search and seizure challenges in this proceeding will probably be litigated in the related criminal action before Judge Amon.

■ In an effort to challenge the Government's attempted demonstration of probable cause that the apartment at issue was used to facilitate narcotics transactions and/or to show that the claimant was an "innocent occupant" (*see* 19 U.S.C. § 1615; *United States v. 141st Street Corporation*, 911 F.2d 870, 876 [2d Cir.1990]), counsel for the claimant made a broad Fourth Amendment challenge to the entrance and seizure of the apartment. Specifically, he alleges that the officers' entrance into the apartment was violative of the Fourth and Fourteenth Amendments and actually "moved to suppress" the seizure of the apartment. In this Court's view, in light of the imminence of the related criminal trial, the proper forum for this type of challenge is in the related criminal case in chief before Judge Amon, where such issues can be raised by way of suppression hearings. If such challenges are not raised in the criminal case, they may be renewed upon the continuation of this proceeding.

c) The claimant will suffer no hardship or prejudice by the issuance of a stay.

■ The Court finds that the claimant Debora Carrero will not be prejudiced by

the issuance of this stay. Counsel for the claimant concedes that she has been at all times and will continue to have full possession and quiet enjoyment of the apartment during the period that the stay is in effect.

The claimant's initial basis for alleging prejudice is that the arresting officers' memories will fade with time. Such an argument is without merit. To begin with such an assertion is purely speculative. In addition, even assuming such a lapse of memory occurs, this could in fact inure to the benefit of the claimant. Further, the testimony of the police officers at the suppression hearing and/or the criminal trial could be used by the claimant for purposes of cross-examination in this proceeding, actually affording the claimant valuable *de facto* discovery prior to the hearing of this proceeding.

d) The stay is appropriate even though the claimant is not a defendant in the related criminal action.

The claimant's argument that since she is not a defendant in the criminal trial a stay would be improper, is also without merit. It is undisputed that the criminal trial is "related" to this proceeding, in the sense that the activities that allegedly took place in the defendant apartment form the basis of some of the acts alleged in the criminal indictment in *United States v. Ramos*.

To obtain a stay based on "good cause" and without prejudice to the claimant, there need not be an identity of parties in both actions (*see In re Ramu, supra*, 903 F.2d at p. 319). Furthermore, it is conceded by counsel for the claimant that Jose Santiago, a defendant in the related criminal trial who is charged with crimes arising from his alleged narcotics activities at 55 Rutgers, is the boyfriend and father of the claimant's four year old son (Lloyd Affirmation ¶ 11). Although the Government's argument in favor of a stay is not as compelling when the claimant is not a criminal defendant or a potential target of a criminal investigation, the considerations supporting a stay remain the same where the claimant is a relative or associate of the criminal defendant, as in this case (*see* D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 10.02, at p. 10–7 [1990] ["a decision declining to grant a stay of discovery in a forfeiture case on the ground that the claimant was the wife of the criminal defendant rather than the defendant himself cannot be justified" (footnote omitted) ]).

## IV. CONCLUSION

Accordingly, based upon the foregoing, the Court finds that the Government has sufficiently established "good cause" to stay this proceeding pending disposition of the criminal trial. Although declining to adopt the *Whitehead* standard, the Court nonetheless finds that the Government will suffer irreparable harm in the absence of a stay if it is compelled to produce the requested documents. Additionally, the balance of equities tips decidedly in favor of the Government, since the issuance of a stay will not prejudice the claimant who is and will remain in full possession of the apartment at issue.

Since good cause to stay this proceeding pending the final disposition of the related criminal trial exists, and the Court finds that no prejudice or hardship will result to the proposed claimant by reason of a stay, the Government's application is granted. Accordingly, this forfeiture proceeding against 55 Rutgers Street, Apartment 10A, New York, New York, is stayed pending disposition of the related criminal action entitled *United States v. Ramos, et al.*, CR–90–426 (CBA) (E.D.N.Y.). The Government is directed to advise all claimants and the Court, within five (5) days after the disposition of the criminal case, at which time the Court will set a new date to resume the probable cause hearing.

SO ORDERED.