UNITED STATES of America, Plaintiff,

v.

ALL RIGHT, TITLE AND INTEREST IN the REAL PROPERTY AND BUILDINGS KNOWN AS 228 BLAIR AVENUE, BRONX, NEW YORK, 230 Blair Avenue, Bronx, New York, 232 Blair Avenue, Bronx, New York, 234 Blair Avenue, Bronx, New York, 236 Blair Avenue, Bronx, New York, 238 Blair Avenue, Bronx, New York and 249 Blair Avenue, Bronx, New York, Defendants-in-rem.

No. 92 Civ. 1451 (SWK).

United States District Court,
S.D. New York.

May 3, 1993.

Roger S. Hayes, U.S. Atty., S.D.N.Y., New York City by Serene K. Nakano, for the U.S.

Law Offices of Richard A. Rehbock, New York City by Richard A. Rehbock, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The Government commenced this civil forfeiture action against certain real property located in the Bronx, New York. The Government now moves, pursuant to 21 U.S.C. § 881(i), for an order staying all discovery and other proceedings in this case pending the trial in *United States v. Eric Millan–Colon,* S9 91 Cr. 685 (SWK). The Government also moves, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to dismiss three counterclaims filed with the defendants' answer. Claimants Anthony J. Puma ("Puma"), Mario Marciano ("Marciano") and Flamar Enterprises, Ltd. ("Flamar") (collectively "Claimants") oppose the Government's motion for a stay and motion to dismiss, and cross-move for an order permitting them to amend their answer to include a *Bivens* [1] action against Assistant United States Attorney Sharon Cohen Levin and New York Drug Enforcement Task Force ("NYDETF") agents William O'Flaherty ("O'Flaherty") and David Dongilli ("Dongilli").

## BACKGROUND

Claimants allege that on October 22, 1987, the defendant properties were purchased by Puma and Marciano under the corporate name of Flamar. Answer at ¶ 34. The open land was developed and buildings were erected by Marciano Construction Company. All financing was arranged through bank loans. *Id.*

On March 30, and 31, 1990, seven contracts of sale were executed for the seven defendant properties, whereby Flamar agreed to sell them to criminal defendant Eric Millan–Colon ("Millan") for $314,600 each. Answer at ¶ 35. The terms of each contract required a $15,000 downpayment, with the remainder to be paid at the closing as follows: $79,600 in cash or certified or savings bank check and a mortgage of $200,000. *Id.* Thereafter, on March 30 and April 11, 1990, Millan tendered seven $15,000 downpayments by personal check. *Id.*

In November 1990, bank loans were arranged by claimants in order to replace existing building loans for four of the seven lots, namely, 234, 236, 238 and 240 Blair Avenue. Answer at ¶ 36. Simultaneously, deeds were executed transferring ownership of these properties from Flamar, as follows: 234 and 236 Blair Avenue to Marciana; 238 and 240 Blair Avenue to Puma. Flamar remained titleholder of the remaining three lots. *Id.*

On October 10, 1990, after the adjournment of several closing dates, claimants demanded an additional downpayment of $100,000, which Millan paid, in order to extend the default provisions of the contracts until the end of 1990. Answer at ¶ 37. In June 1991, a "time of the essence" notice was served on Millan's attorney, announcing a July 25, 1991 closing date or, in the alternative, a termination of the contracts of sale via the default provisions in each. Answer at ¶ 37. On July 25, 1991, no closing being held, the contracts were terminated and the downpayments forfeited to the claimants pursuant to the default provisions in the contracts. *Id.*

Meanwhile, in October 1990, the NYDETF began conducting an investigation concerning narcotics trafficking and money laundering activities by Millan and others. *See* Affidavit of Detective William O'Flaherty, sworn to on Aug. 7, 1991 (the "O'Flaherty Aff."), at 4. On August 1, 1991, Millan was arrested and charged with conspiracy to distribute and possess heroin, substantive narcotics trafficking, the unlawful possession and use of fire-

---

**1.** *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

arms, and engaging in a continuing criminal enterprise.

Following Millan's arrest, the Government applied to the Court for the issuance of warrants to seize and forfeit all right, title and interest in the above-captioned properties. The application was based on the Affidavit of Detective William O'Flaherty, wherein he asserted that the acquisition of these properties was derived from proceeds of illegal narcotics activity or property involved in transactions in violation of 18 U.S.C. §§ 1956 and 1957. Specifically, O'Flaherty asserted that Millan had ownership interests in the defendant properties. O'Flaherty based this belief on entries in Millan's checkbook, seized pursuant to an August 1, 1991 search, indicating that on March 30, 1990, Millan made four $15,000 payments to Flamar for "228 Blair", "230 Blair", "232 Blair," and "234 Blair." O'Flaherty Aff. at ¶ 18. The register further revealed that on April 11, 1990, Millan made three $15,000 payments to Flamar for "236 Blair", "238 Blair", and "240 Blair." *Id.* O'Flaherty also indicated that during the execution of search and seizure warrants on EJay Enterprises, Ltd., one of Millan's many businesses, law enforcement officials recovered a file titled "Blair Realty", containing: (1) a "fax cover sheet" dated January 4, 1991 from Marciano General Contracting; (2) a list of tenants for the 18 rental units located at 228–240 Blair Avenue; (3) receipts from several hardware stores for purchases of lightbulbs, locks, and assorted maintenance items; (4) two credit card receipts from Jose Santos, superintendent of the Blair apartments; and (5) a blank apartment lease. *Id.* at ¶ 19. In addition, O'Flaherty testified that information obtained from intercepted telephone conversations indicated that Heriberto Rosario, an alleged co-conspirator of Millan, called a woman at Marciano Construction Company and discussed with her matters concerning his "houses" on Blair Avenue in the Bronx. *Id.* at ¶ 20. Similarly, in an intercepted conversation on April 24, 1991, Millan mentioned that Puma and Marciano were responsible for his "other loans." Based on this information, the warrants were issued on August 7, 1991.[2] *Id.*

On February 28, 1992, the Government filed a forfeiture complaint seeking forfeiture of the defendant properties on the grounds that there is probable cause to believe that the properties were (1) proceeds traceable to exchanges of controlled substances (21 U.S.C. § 881(a)(6)[3]); (2) property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or § 1957 (18 U.S.C. § 981(a)(1)(A)[4]); or (3) property traceable to such property.

On March 19, 1992, claimants filed an Answer asserting an ownership interest in the properties, and, as an affirmative defense, that they are innocent owners pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(2). Answer at ¶ 26. In addition, claimants note that they are not named as parties to the underlying indictment or targets of the criminal investigation in *United States v. Eric Millan–Colon, et al.*, S9 91 Cr. 685 (SWK). In fact, according to the claimants, the only connection they have with the *Millan* case is the contract executed by criminal defendant Eric Millan–Colon to purchase the subject properties. This contract was defaulted, however, and as a result neither title nor any other interest passed to him.

Claimants further indicate that as a result of the seizure, the Government has placed the management of the rental properties in the hands of a management company. An-

2. Apparently, O'Flaherty omitted to tell the Court that the contract of sale from claimants to Millan was terminated and that no rights in the defendant properties passed to Millan. Claimants contend that this omission may have affected the Court's determination of probable cause.

3. 21 U.S.C. § 881(a)(6) subjects to seizure and forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by a person in exchange for a controlled substance in violation of [Title 21], all proceeds traceable to such an exchange, and all moneys or negotiable instruments, and securities used, or intended to be used, to facilitate a violation of [Title 21]."

4. 21 U.S.C. § 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of ... section 1956 [laundering of monetary instruments] or 1957 [engaging in monetary transactions in property derived from specified unlawful activity] of this title, or any property traceable to such property."

swer at ¶ 47. Thus, claimants have been prevented from collecting rents, maintaining landlord/tenant actions and all other management/owner duties. *Id.* at 48. As a result, according to claimants, rental incomes have been lost and tenants have left—driving down the rent rolls. *Id.* Additionally, no rental income has been used to offset the attendant costs of maintaining the properties and the payments of mortgages, taxes and insurance. *Id.* As a result, claimants at their own expense have attempted to pay the mortgage payments, real estate taxes, insurance premiums, and other costs related to the properties. *Id.* at ¶¶ 53–55.

Based on the forgoing, claimants seek (1) monetary damages for alleged violations of their Fourth and Fifth Amendment Rights (First Counterclaim); (2) discovery from the Government as to the management firm managing the properties and an accounting of the collection of rental income (Second Counterclaim); and (3) attorneys' fees pursuant to the Equal Access to Justice Act (Third Counterclaim).

The Government now moves for a stay pursuant to 21 U.S.C. § 881(i), which provides in relevant part that the filing of an indictment charging narcotics violations that is related to a civil forfeiture proceeding "shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding." The Government argues that such a stay is necessary as (1) the *Millan* criminal prosecution is closely related to the instant action; and (2) disclosure of the identities of the confidential informants who will testify in both the forfeiture case and the criminal trial would provide the criminal defendants with premature discovery to which they are not otherwise entitled under the Federal Rules of Criminal Procedure.

In addition, the Government moves for dismissal of the three counterclaims filed with defendants' answer on the grounds that (1) this Court lacks subject matter jurisdiction to entertain a counterclaim for monetary damages for alleged constitutional violations; (2) a counterclaim is not the appropriate mechanism to seek discovery under the Fed-eral Rules of Civil Procedure; and (3) a request for attorneys' fees under the Equal Access to Justice Act is premature as there is no "final judgment" in this forfeiture action and claimants are not the "prevailing party."

Claimants oppose the Government's motions and cross-move for an order granting them permission to file an amended answer and a third party action, pursuant to Rules 15 and 14, respectively, of the Federal Rules of Civil Procedure. Specifically, claimants seek to add a *Bivens* action against the Assistant United States Attorney previously assigned to this case and the Drug Task Force agents involved in this matter.

## DISCUSSION

### A. Motion for a Stay

█ Title 21, United States Code, Section 881(i) provides in pertinent part:

> The filing of an indictment or information alleging a violation of this subchapter or subchapter II of this chapter ... which is also related to a civil forfeiture proceeding under this section, shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding.

The issue, therefore, for purposes of this motion, is whether the Government has established "good cause" for the stay.[5] Although there is no definitive standard specifying what the Government must show to satisfy "good cause," other courts have balanced the hardship and resultant prejudice to the claimants in not going forward versus the Government's interest in avoiding civil discovery. *United States v. Banco Cafetero Int'l,* 107 F.R.D. 361, 366 (S.D.N.Y.1985), *aff'd,* 797 F.2d 1154 (2d Cir.1986); *United States v. Leasehold Interests in 118 Avenue D, Apartment 2A,* 754 F.Supp. 282, 286 (E.D.N.Y.1990). These courts further hold, however, that the Government is required "to make some specific showing of potential harm" if the requested discovery is disclosed. *United States v. Leasehold Interests in 118 Avenue D, Apartment 2A,* 754 F.Supp. at

---

5. The Court finds that the instant forfeiture proceeding is sufficiently "related to" a drug offense for which there has been an indictment to satisfy the statute.

287. "Mere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery ... will not avail on a motion for a stay." *Id.; see also In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir.1990) ("mere possibility" of prejudice not sufficient); *United States v. $151,388.00 United States Currency*, 751 F.Supp. 547, 550 (E.D.N.C.1990) ("[m]ore than conclusory allegations that there will be prejudice without the stay are required in order to comport with [good cause].").

In support of its application for a stay during the pendency of the *Millan* trial, the Government contends that "[n]either defendants in the *Millan* case nor claimants in this civil case are entitled to learn the Government's prosecutorial theories which may depend on information supplied by confidential informants or other sources which may be developed in the course of the criminal trial." *See* Government's Memorandum of Law in Support of its Motion for a Stay, dated March 1, 1993 ("Gov't Mem."), at 1. Specifically, the Government indicates that the same NYDETF case agents, officers and confidential informants will testify in both cases, and that discovery of the identity of these persons and/or the substance of their testimony would provide the criminal defendants with premature discovery to which they are otherwise not entitled under the Federal Rules of Civil Procedure. Gov't Mem. at 5–6.

In opposition, claimants assert that a stay is not warranted as (1) "the delays in this matter have completely destroyed the value of this property, have exhausted all of the equity in the property and have severely harmed the claimants"; (2) the management company retained by the Government to oversee the properties and collect rents has failed to keep the mortgage payments current and due—and thus, is a "disaster"; (3) the O'Flaherty Affidavit lacks sufficient factual basis to support a stay; and (4) the claimants are not parties to the criminal action. *See* Affidavit of Richard A. Rehbock, sworn to on March 15, 1993 (the "Rehbock Aff.").

■ Based on a balancing of the relevant factors, the Court finds that a stay is not warranted. First, the Government is merely speculating that the claimants will abuse the discovery process to obtain information to which they are not entitled. Claimants have not sought any discovery in this case, and, in fact, contend that discovery is not necessary. *See* Memorandum in Sur-reply to the Government's Reply to Claimants' Opposition for a Stay, dated April 9, 1993, at 1.

Second, other than the broad contention that confidential informants and law enforcement officers will testify at both proceedings, the Government offers no other explanation as to how it would be prejudiced in the *Millan* case. *See United States v. Leasehold Interests in 118 Avenue D, Apartment 2A*, 754 F.Supp. at 287 (conclusory allegations not sufficient to show good cause). For instance, the Government makes no substantiated claim that disclosure would compromise confidential law enforcement information, hinder future arrests, or jeopardize the testimony of cooperating witnesses. In fact, the Court is doubtful that any confidential informant or cooperating witness has information regarding these particular real estate transactions as the issues present herein are matters exclusively within the claimants' control, i.e., whether Millan consummated the sales purchase and, if yes, whether claimants knew that Millan was using tainted funds. As the Court finds no evidence that proceeding with the instant civil matter will jeopardize or interfere with the Government's prosecution of the *Millan* defendants, a stay is not warranted on this basis.

Third, to stay the forfeiture proceeding at this time violates fair play and may implicate serious due process concerns. On April 16, 1993, the Court granted a mistrial in the *Millan* case, after learning of misconduct by agents of the NYDETF during the investigation of the *Millan* defendants. *See United States of America v. Eric Millan, et al.*, S9 91 Cr. 685 (SWK) (S.D.N.Y. filed April 16, 1993). Citing "the possibility that future inquiries will reveal additional instances of misconduct affecting the [*Millan* prosecution], *id.*, the Court declared a mistrial, in part, to enable the Government to determine the scope and impact of alleged corruption in the NYDETF. No information is currently

available, however, as to how long this investigation will take. At this point, therefore, the timetable for the *Millan* trial is indefinite. Thus, the Court foresees that any stay would be in place for a potentially lengthy period of time, indefinitely depriving claimants of their property. *See United States v. Banco Cafetero Int'l,* 107 F.R.D. at 366; *see also McKnight v. Blanchard,* 667 F.2d 477, 479 (5th Cir.1982) ("stay orders will be reversed when they are found to be . . . of indefinite duration").

Fourth, the claimants will be prejudiced by a lengthy delay in the adjudication of the forfeiture proceeding. The claimants are allegedly suffering loss of business and a wasting of their assets as a result of the properties' mismanagement. *See* Rehbock Aff. at ¶ 8 (attesting that "the management company has failed to keep the payments current and the loans are severely in default"). In addition, the Government has ceased making mortgage payments. Consequently, claimants have paid over $200,000 of their own funds—without benefit of collecting rental incomes—to the bank. At this time, however, claimants can no longer afford to make these voluntary payments. Consequently, a balance of $158,000 in interest alone is currently past due and owing. *See* Letter from Anthony Turzo, to the Honorable Shirley Wohl Kram, dated 3/9/93.[6]

Fifth, the Government's argument in favor of a stay is not compelling given that the claimants are not criminal defendants or potential targets of criminal investigations. *See United States v. Leasehold Interests in 118 Avenue D, Apartment 2A,* 754 F.Supp. at 289. Thus, there is less likelihood that any disclosure by the Government in the civil case would benefit the criminal defendants currently standing trial. *See* S.Rep. No. 225, 98th Cong., 2d Sess. Sec. I, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3182, 3398–99 (one of the principal factors motivating Con-

gress in enacting § 881(i) was to prevent a criminal defendant from employing civil discovery to circumvent the limitations imposed upon discovery in criminal cases).

Sixth, the Court finds that there are other measures less drastic than a stay which will more fairly protect the interests of the parties. If, as the Government contends, discovery will enable claimants to learn the identity of confidential informants, this information can be protected by means of an order precluding access to the informants' identities and prohibiting the parties in this civil action from revealing any of the information obtained through discovery to third parties. The Court would also be available to conduct an *in camera* review of any sensitive materials to determine the propriety of disclosure. *See United States v. One Parcel of Real Estate Located at 12525 Palm Road, North Miami, Dade County, Fla.,* 731 F.Supp. 1057 (S.D.Fla.1990) (ordering *in camera* inspection of materials sought in discovery).

In conclusion, after considering the various factors, the Court finds that a stay is not appropriate. The Government has simply not established "good cause" to delay this proceeding pending disposition of the *Millan* criminal trial. The Court further finds that the claimants will suffer irreparable harm if the stay is granted. Accordingly, the Government's application for a stay is denied.

## B. Motion to Dismiss the Counterclaims

### 1. *Monetary Damages for Constitutional Violations*

Claimants' First Counterclaim seeks monetary damages for violations of the claimants' Fourth and Fifth Amendment rights. Specifically, claimants contend that the Government's "excessive delay" of six and one half months in filing the complaint and "continued seizure of the defendant properties despite the repeated and continuous demands for

---

**6.** Although the Government contends that it submitted a proposal to the claimants, authorizing their management of the subject properties, this agreement was never finalized as claimants were unable to post the $620,000 bond required by the Government. *See* Declaration of Assistant United States Attorney Serene K. Nakano, dated April

7, 1993, at ¶¶ 6–8. Instead, claimants submitted a counter-proposal that: (1) they manage these properties for no compensation; (2) all rental collections will be placed in a dedicated account; and (3) funds will be disbursed only to maintain mortgage payments and arrears, municipal charges, taxes and emergency maintenance. The Government has not responded to this proposal.

their return" resulted in a "taking" in violation of the Fourth and Fifth Amendments. Answer at ¶¶ 59–60. The Government argues, however, that as claimants seek monetary damages against the United States for constitutional violations, the Court must dismiss the first counterclaims for lack of subject matter jurisdiction. In response, claimants maintain that dismissal for want of subject matter jurisdiction is not warranted as the counterclaim "was not brought as a plenary action." *See* Memorandum by Claimants Puma, Marciano and Flamar in Opposition to Government's Motion to Dismiss ("Cls. Mem."), at 2. Claimants argue that the Government "opened up the jurisdictional door" by filing an *in rem* forfeiture action. *Id.* Thus, according to claimants, to permit the Government to seek forfeiture, and then deny claimants permission to countersue, is to deprive them of property without due process of law. Cls. Mem. at 6. The Court disagrees.

 It is well established that the United States Government has sovereign immunity and, consequently, can be sued only to the extent it consents to be sued, and only in the manner established by law. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980). Thus, counterclaims against the United States can be maintained only where the Government has consented or waived its immunity from suit on that claim. *See, e.g., United States v. Krieger*, 773 F.Supp. 580, 589 (S.D.N.Y.1991); *United States v. 2,116 Boxes of Boned Beef Weighing Approximately 154,121 Pounds*, 726 F.2d 1481, 1490–91 (10th Cir.), *cert. denied sub nom., Jarboe Lackey Feedlots, Inc. v. United States* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1007 (5th Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981); *United States v. Lockheed L–188 Aircraft*, 656 F.2d 390, 393 (9th Cir.1979).

 Initiation of a forfeiture action does not constitute a waiver of sovereign immunity. For example, in *United States v. Lockheed L–188 Aircraft*, 656 F.2d at 396, an *in rem* forfeiture action against an aircraft, the Court of Appeals for the Ninth Circuit held that the aircraft's owner could not assert a counterclaim for damages arising out of the alleged unconstitutional forfeiture of the aircraft in the *in rem* forfeiture action. *See also United States v. Nipissing Mines Co.*, 206 F. 431 (2d Cir.1913), *cert. denied*, 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582 (1914) (holding that no affirmative judgment can be recovered against the United States on a counterclaim).

 Nor can this claim survive as a tort cause of action as claimants have failed to comply with the procedural requirements of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, which governs common law tort claims. As an initial matter, under the FTCA, a tort claim must be "presented in writing to the appropriate federal agency within two years after such a claim accrues." 28 U.S.C. § 2401(b). The burden is on the plaintiff to both plead and prove compliance with the statutory requirements. *McNuff v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936). In the absence of such compliance, a subsequent court action will be barred by sovereign immunity, precluding the district court from exercising subject matter jurisdiction. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir.1987), *cert. denied sub nom., Fraticelli v. Dow Chem. Co.*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Accordingly, as claimants have not presented evidence of compliance with the FTCA's procedural requirements, the Court does not have subject matter jurisdiction over the first counterclaim for monetary damages. As a result, this claim must be dismissed.

2. *Request for An Accounting and Other Discovery*

In the Second Counterclaim, claimants demand discovery of the firm managing the defendant properties and an accounting of the collection of rental income. Answer at ¶ 63. As the Government has voluntarily provided the records informally requested and has indicated that it will provide updated documents when they become available, claimants' demand is moot. Cls. Mem. at 8.

3. *Request for Attorneys' Fees Under the Equal Justice Act*

In the Third Counterclaim, claimants demand an award of counsel fees, pursuant to

the Equal Access to Justice Act, 28 U.S.C. § 2142(a)(1)(A). Answer at ¶ 68. Claimants now acknowledge, however, that "any decision upon the merits [regarding their request for attorneys' fees under the Equal Justice Act] is unnecessary and premature." Cls. Mem. at 9. Therefore, the Court will not address this issue.

## C. Leave to File an Amended Answer

In their opposition, claimants also seek leave of the Court to file an Amended Answer, pursuant to Rules 14 and 15(a) of the Federal Rules of Civil Procedure, including a third party *Bivens* action against the Assistant United States Attorney previously assigned to this case and certain Government agents. On June 29, 1992, the Government submitted a letter to the Court seeking a conference and an adjournment of the date to respond to the cross-motion for leave to file an Amended Answer. *See* Letter from Assistant United States Attorney Ellen Silverman Zimiles, to the Honorable Shirley Wohl Kram, dated 6/29/92. As a result, the Government has not responded to the motion to amend. Accordingly, in order to set a briefing schedule regarding claimants' motion, as well as discuss how the action will proceed, the parties are directed to appear before the Court at a conference scheduled for May 7, 1993 at 2:00 p.m.

## CONCLUSION

For the foregoing reasons, the Government's motion for an order staying all discovery and other proceedings in this case pending the trial in *United States v. Eric Millan–Colon*, S9 91 Cr. 685 (SWK), is denied. The Government's motion for an order dismissing claimants' counterclaims is granted with respect to the First Counterclaim. The parties are directed to appear before the Court at a conference scheduled for May 7, 1993, at 2:00 p.m.

SO ORDERED.