UNITED STATES of America,
Plaintiff,

v.

ALL FUNDS DEPOSITED IN ACCOUNT NO. 200008524845, First Union National Bank, 441 Market Street, Philadelphia, Pennsylvania, Account Holder National Fuels Corporation, 1420 Fifth Avenue, Suite 2200, Seattle, Washington 98101, Defendants.

and

United States of America, Plaintiff,

v.

All Funds Deposited in Account No. 3000034807771, First Union National Bank, 441 Market Street, Philadelphia, Pennsylvania, Account Holder, Peppermint Revocable Trust and Tanja Fredette, Defendants.

No. 00–CV–236–J,—0CV–239–J.

United States District Court,
D. Wyoming.

Sept. 5, 2001.

Thomas D. Roberts, Assistant U.S. Attorney, Cheyenne, for Plaintiff.

Timothy C. Kingston, Graves, Miller & Kingston, Cheyenne, Charles E. Graves, Graves, Miller & Kingston, Sheridan, for Defendant.

### NUNC PRO TUNC ORDER DENYING RELIEF FROM DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S ORDER TO STAY CIVIL FORFEITURE PROCEEDINGS PURSUANT TO 18 U.S.C. § 981(g)

ALAN B. JOHNSON, District Judge.

This civil forfeiture action involves funds that had been seized by the Government pursuant to a verified complaint for forfeiture in rem and a finding for probable cause and order for arrest of property in rem issued on December 13, 2000, by United States Magistrate Judge William C. Beaman in Civil Action No. 00–CV–236 and on December 15, 2000, in Civil Action No. 00–CV–239. The Magistrate Judge found that sufficient probable cause existed to warrant the seizure of the defendant Funds on the ground that they were subject to forfeiture pursuant to 18 U.S.C.A. § 981(a)(2)(B) as constituting property subject to forfeiture to the United States pursuant to 18 U .S.C. § 981(a)(1)(C) as amended by Pb. L. 106–185, April 25, 2000. The United States subsequently commenced a criminal investigation into the activities of National Fuels Corporation and its principal employees and owners for possible violations of federal law prohibiting wire fraud (18 U.S.C. § 1343), and mail

fraud (81 U.S.C. § 9341). On January 5, 2001, a search warrant was executed at the premises of National Fuels Corporation, located at Holiday, Florida. On February 22, 2001, the United States filed its motion to stay civil forfeiture proceedings pursuant to 18 U.S.C. § 981(g) on the basis that to allow civil discovery in this matter would prejudice the ability of the United States to continue its related criminal investigation. On February 23, 2001, an Order submitted by the United States was executed by the Court granting the requested stay. This matter returns for consideration on the claimants/defendants' response to plaintiff's motion and request for reconsideration of the stay, filed on February 28, 2001.

The Government's own motion to stay was supported by a sealed, *ex parte*, affidavit. The claimants/defendants argue that they were not afforded an opportunity to respond to the plaintiff's motion; that matters that would have been raised by the claimants/defendants were not presented; that the order was entered without a hearing; that the order was entered prior to the 10–day time period for response provided by the Local Rules; and that the granting of the motion to stay occurred without due process.

On March 16, 2001, counsel for the claimants/defendants appeared at a scheduled hearing of the motion for reconsideration and presented their arguments with those by counsel for the Government. A second supplemental ex parte submission by a special agent of the Federal Bureau of Investigation, detailing concerns related to the investigation in the criminal proceedings was filed on April 5, 2001. Claimants/defendants have submitted a reiteration of the points they made at earlier hearings opposing the stay and the use of *ex parte*, confidential submissions in support of such requests. Approximately 150 claims have been received in the meantime from third-parties, seeking reimbursement of amounts paid to the claimants-defendants, totaling over $5,000,000. The investigation which led to the filing of the verified complaints for forfeiture commenced on December 11, 2000, when Lance W. Alexander, a special agent of the Federal Bureau of Investigation (FBI), received a police report and documentation from Gillette, Wyoming, reflecting that Mike Davis, d/b/a Davis Chevrolet, had been contacted by a person representing National Fuels Corporation, (NFC), 1400 Fifth Avenue, Suite 2200, Seattle, Washington. The representative advised Davis that he was offering a promotional and incentive program where the automobile dealer, Davis, would purchase a gasoline voucher good for $500 worth of gasoline for only $45. The vouchers could then be used by the dealer to give to automobile customers in lieu of cash discounts. The customer could choose from National Fuel Companies such as Chevron, Exxon, Mobil, Standard, and Texaco, using their vouchers to purchase gasoline. According to the representative of National Fuels, Davis's customers would send their gasoline receipts to National Fuels Corporation for reimbursement.

Davis purchased the vouchers and delivered them to his customers as an incentive and benefit to those who purchased automobiles. However, Davis began receiving complaints that National Fuels Corporation was not reimbursing customers for gasoline purchases. Davis had given out between $30,000 and $40,000 worth of gasoline vouchers to his customers.

Davis attempted to resolve the issues of non-payment with National Fuels Corporation representatives. His calls, however, were unanswered. Contacts with others reflected complaints received by the Seattle Better Business Bureau. The premises listed to National Fuels Corporation in

Seattle was actually owned by another company renting temporary office space, meeting rooms and mailboxes. That company forwarded approximately 2,000 pieces of mail received daily in behalf of National Fuels Corporation to another post office at Holiday, Florida.

## STATUTORY AUTHORITY

Title 18, U.S.C. Section 981(g) provides the basis for a stay of a civil forfeiture proceeding based upon a court determination that civil discovery will adversely affect the ability of the United States to properly investigate and prosecute a criminal case. The statute provides:

Section 981. Civil forfeiture.

(g)(1) Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

(2) Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that—

(A) The claimant is the subject of a related criminal investigation or case;

(B) The claimant has standing to assert a claim in the civil forfeiture proceeding; and

(C) Continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in a related investigation or case.

(3) With respect to the impact of civil discovery described in paragraphs (1) and (2), the court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case. In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so.

(4) In this subsection, the terms "related criminal case" and "related criminal investigation" mean an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made. In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

(5) In requesting a stay under paragraph (1), the government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.

(6) Whenever a civil forfeiture proceeding is stayed pursuant to this subsection, the court shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect.

(7) A determination by the court that the claimant has standing to request a stay pursuant to paragraph (2) shall apply only to this subsection and shall not preclude the Government from objecting to the standing of the claimant by dispositive motion or at the time of trial.

Title 18, U.S.C. Section 981(g) is part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") which became effective on August 23, 2000. Predecessor statutes found at 18. U.S.C. § 981(g) and 21 U.S.C.

§ 881(i) provided in pertinent part as follows:

(1) The filing of an indictment or information alleging a violation of law, Federal, State or local, which is also related to a forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the forfeiture proceeding.

18 U.S.C. § 981(g), repealed on August 23, 2000.

The filing of an indictment or information alleging a violation of this subchapter or subchapter II of this chapter, or a violation of State or local law that could have been charged under this subchapter or subchapter II of this chapter which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding.

21 U.S.C. § 881(i), repealed effective August 23, 2000.

While the law has recognized the need for stays in civil forfeiture proceedings, courts have held that broader civil discovery available to the claimant in a civil forfeiture case may interfere with pending criminal prosecution and could constitute "good cause" under the former statute. *See United States v. One Single Family Residence Located at 2820 Taft Street,* 710 F.Supp. 1351, 1352 (S.D.Fla.1989) (stay granted where "scope of civil discovery could interfere with criminal prosecution"); *United States v. Premises and Real Property at 297 Hawley Street,* 727 F.Supp. 90, 91 (W.D.N.Y.1990) ("good cause" requirement satisfied where stay necessary to protect criminal case from "potentially" broad discovery demands of claimant/defendant). Other courts have required that the United States demonstrate some specific harm. *See United States v. Leasehold Interests in 118 Avenue D,* 754 F.Supp. 282, 287 (E.D.N.Y.1990) ("[m]ere

conclusory allegations of potential abuse or simply the opportunity by the claimant to improperly exploit civil discovery … will not avail on a motion for a stay"). Recent cases have applied multiple balancing factors to determine whether "good cause" justifies a stay requested either by the Government or by the claimant/defendant. *See United States v. All Funds, Monies, Securities, Mutual Fund Shares and Stocks,* 162 F.R.D. 4 (D.Mass.1995); *United States v. Section 17 Township,* 40 F.3d 320 (10th Cir.1994); and *United States v. Four Contiguous Parcels,* 864 F.Supp. 652 (W.D.Ky.1994).

The newly effective amendment to the civil forfeiture law contained in the Civil Asset Forfeiture Reform Act of 2000 provides for a stay whenever a court determines that civil discovery would adversely affect the ability of the United States to investigate or prosecute a related criminal case. The statute also affords the claimant/defendant with procedures for seeking a stay where civil proceedings and civil discovery burden the claimant/defendant's right to protect against self-incrimination.

Arguably the justification for a stay of civil proceedings during the investigatory period of the related criminal proceedings is as justified as instituting a stay after return of a criminal indictment or the filing of an information in the related criminal case. The filing of criminal charges usually represents a public disclosure of the nature of the Government's criminal claims against a claimant/defendant. The provisions of the amended law appear to apply where the civil and criminal investigations are related. Neither the parties nor the facts in the civil and criminal cases need to be identical for the two cases to be considered related. The court shall consider the degree of similarity between witnesses, facts and circumstances involved in the two proceedings without requiring an

identity with respect to any one or more factors. *See* 18 U.S.C. § 981(g)(4). In this respect, the statute is consistent with case holdings under the former law that required some substantial similarities between the cases in order for them to be considered related. *United States v. A Parcel of Realty Commonly Known as 4808 South Winchester,* 1988 WL 107346 (N.D.Ill.1988). The actions pending in this Court reflect that National Fuels Corporation, Peppermint Revocable Trust and Tanja Fredette are claimants/defendants to the action. It is not necessary that any of the named claimants/defendants should be defendants in the criminal proceedings, but rather the court needs to examine these submissions of the Government and other submissions received in connection with this matter to determine whether or not there is a similarity between witnesses, facts and circumstances involved in the two proceedings for the court to determine that they are related.

In an appropriate situation, the Government may submit evidence in a confidential, *ex parte* form in order to avoid disclosing matters that may adversely affect an ongoing criminal investigation or pending criminal trial. 18 U.S.C. § 981(g)(5). Here, the Government has availed itself of the statute permitting ex parte disclosure to the court with detailed declarations that were filed with the Government's motion for a stay and with a supplemental filing expanding and updating information that was provided on February 22, 2001. Understandably the claimants/defendants object to a procedure that would permit the filing of *ex parte,* confidential and sealed declarations in support of a stay. They assert that they do not have a present ability to confront the confidential statements or effectively rebut them.

Finally, the amended statute provides that under certain circumstances rather than staying civil discovery, the court may fashion a protective order, limiting discovery. *The United States v. Parcels of Land (Laliberte),* 903 F.2d 36 (1st Cir.1990). The choice of a limiting protective order is discouraged as an alternative to a stay "if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so." 18 U.S.C. § 981(g)(3).

## DISCUSSION

It is apparent that the amended stay provisions contained in CAFRA have broadened the stay relief significantly. First, the availability of a stay is expanded to the period of investigation and no longer requires that an indictment or information be filed, commencing formal criminal proceedings. This amendment would seem to recognize that the need for confidentiality is as great if not greater during the investigatory stage of a criminal proceeding when much of the activity of law enforcement and the courts is conducted in a confidential setting. CAFRA further broadens the availability of relief by structuring avenues under which a claimant/defendant may seek and obtain stay relief in order to preserve testimonial rights of the defendant and avoid disclosure of information which otherwise might not be available in a criminal case. The new statute also allows a broader range of relief. In appropriate cases the court may consider substitution of a protective order over a stay of all civil discovery. The standard for granting relief under the amended statute has also been changed by striking the words "for good cause shown" found in the former sections of the forfeiture law that establish the standard for granting stay relief. The new statute requires only that the court "determine(s) that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation for the prosecution of a

related criminal case." *See* 18 U.S.C.A. § 981(g)(1).

■ The claimants/defendants argue that grant of stay may deprive claimants of their property without opportunity for hearing. They contend that the court should consider mitigating circumstances affecting the appropriateness of a stay. In support of this approach they argue that this court should impose upon the Government a standard similar to that required for issuance of a preliminary injunction. *See United States v. Four Parcels of Property,* 864 F.Supp. 652, 654–55 (W.D.Ky. 1994) (quoting *In re Ramu,* 903 F.2d 312, 320 (5th Cir.1990)). The use of a strict standard for stay relief has been criticized in *United States v. Leasehold Interests in 118 Avenue D. Apt. 2A,* 754 F.Supp. 282 (E.D.N.Y.1990). "This Court is of the view that Congress did not intend to impose a strict standard such as that applicable in obtaining a preliminary injunction, considered to be drastic relief." *Id.,* 754 F.Supp. at 287. The Court also finds it significant that the [*United States v. One Parcel of Real Estate at 1303 Whitehead Street, Key West, Fla.,* 729 F.Supp. 98, 99–100 (S.D.Fla.1990)] *Whitehead* decision cited to no authority in enunciating that standard. Moreover, the only subsequent cases that have cited it favorably involve situations where an indictment had *not* yet been filed, and the claimants were either dispossessed from the defendant properties (*see, e.g., In re Ramu Corp.,* 903 F.2d 312 [5th Cir.1990]), or the properties were seized and sold, and the proceeds were deposited in the court registry (*see, e.g., United States v. One Parcel of Real Estate Located at 12525 Palm Road, North Miami, Dade County, Fla.,* 731 F.Supp. 1057 [S.D. Fla.1990]); *United States v. Leasehold Interests,* 754 F.Supp. 282, 287 (E.D.N.Y.1990). Good cause was found to encompass a requirement that the Government make "some specific showing of potential harm if the requested discovery is disclosed without being compelled to compromise the prosecution of the ongoing related criminal proceeding." *Id.*

On February 2, 2001, claimants/defendants delivered their first set of interrogatories, requests for admission and request for production of documents to the Government. The discovery broadly seeks information that could compromise cooperating witnesses not yet required to be disclosed. The *ex parte* submissions filed under seal on February 22, 2001, reflect information that if disclosed would compromise the continuing investigation of the National Fuels Corporation and its principals, including methods of operation and potential witnesses. The second supplemental *ex parte* submission filed on April 5, 2001, further details conduct of National Fuels Corporation and its principals under investigation and concerns that have developed surrounding securing evidence of continuing activities of the principals. It is clear from the information contained in the submissions that the criminal investigation is in an active stage. At the oral argument on March 16, 2001, counsel for the claimants/defendants indicated that they could narrow the discovery requests or limit them in some manner as to avoid any concerns that may exist concerning the criminal case; however, he further failed to specify how this would occur and indicated that one of the first matters that the claimants/defendants would like to take up would be deposing the police officer at Gillette, Wyoming, who continues to be involved in the criminal investigation, as well as the Federal civil case. Based upon the *ex parte* submissions to the Court, the arguments of counsel, and the discovery that has been instituted to date by the claimants/defendants, the Court finds that a sufficient showing of potential harm or prejudice to the criminal proceedings in the event that the discovery requests are

complied with and further contemplated discovery occurs has been demonstrated.

Among the allegations submitted by the claimants/defendants is the contention that as a result of the seizure of records and documents from National Fuels Corporation the organization has been put out of business; and National Fuels Corporation lacks the ability to access the records in order to conduct its operations. Assurances have been forthcoming from the Government that counsel for National Fuels Corporation is to have access to the seized documents during the pendency of the civil case and during the criminal investigation. Although the claimants/defendants have pictured themselves as victims of governmental overreaching, the claims to sums seized that have been filed reveal that the criminal investigation is one that has substantial scope and complexity. It is a matter that cannot be questioned, however, that National Fuels Corporation is prejudiced in its ability to conduct business with automobile dealers as it has in the past. However, National Fuels' arguments and submissions lack specificity as to the prejudice that is actually suffered. The funds seized remain in federal custody and are presumably available at some point to be paid over to proper claimants or returned to National Fuels. On its face, this case differs from the cases cited by claimant/defendants involving civil forfeiture proceedings where real estate is seized in that the claimant/defendant often is permitted to occupy the premises while the forfeiture proceedings is pending. Here, the seized funds are alleged to be the proceeds of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341 as well as possible money laundering in violation of 18 U.S.C. § 1956. The evidence that will be presented in the civil forfeiture action is likely to be identical with evidence which may be discovered by the Government's investigation of alleged criminal activity. The dis-

covery sought here has a substantial potential of interfering with the investigation that is ongoing in the alleged criminal proceedings and the work of the federal grand jury.

■ National Fuels Corporation argues that this is an appropriate case to allow discovery to proceed under a protective order. 18 U.S.C. § 981(g)(3). Other than arguments presented by the parties—the Government opposing the protective order because it alleges that it would not have free access to discover testimony of various principals and officers of National Fuels; and the defendant asserting that by virtue of seizure of documents, the Government is in possession of all of the information that it needs to conduct a civil case, neither side has presented a workable means by which the parties might proceed under a protective order that would permit the civil case to proceed in the normal course without a stay.

■ Claimants/defendants raise the issue that a stay would violate claimants' due process rights. "Due process of law must be reasonable, meaningful, and timely or it has no value as a constitutional right." *United States v. Four (4) Contiguous Parcels of Real Property Situated in Louisville, Jefferson County, Kentucky,* 864 F.Supp. 652, 655 (W.D.Ky.1994). This court is mindful of the burdens civil forfeiture places on claimants/defendants. However, the current stay is for a determined length of time. The Supreme Court has held that stays which are indefinite will not be upheld. *Landis v. North American Co.,* 299 U.S. 248, 257, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (stating "[t]he stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."). If there are to be any subsequent motions for a

stay, the Government will have to meet the burdens placed on it by 18 U.S.C.A. § 981(g). The Court will continue to monitor the litigation and ensure that it proceeds in a timely manner.

The Court having reconsidered the issuance of a 90–day stay in this matter and finding that the entry of a stay is appropriate; and the Court being fully advised;

IT IS ORDERED that the motion seeking reconsideration of this Court's Order to Stay Civil Forfeiture should be and the same is **DENIED.**