**UNITED STATES of America, Plaintiff,**

v.

**FOUR HUNDRED SIXTY THREE THOUSAND FOUR HUNDRED NINETY SEVEN DOLLARS AND SEVENTY TWO CENTS ($463,497.72) IN U.S. CURRENCY from Best Bank Account # XXX2677, Nineteen Thousand Nine Hundred Thirty Six Dollars and Seventy Seven Cents ($19,936.77) in U.S. Currency from Best Bank Account # XXX8558, One Hundred One Thousand Five Hundred Eighty Three Dollars and Ninety Eight Cents ($101,- 583.98) in U.S. Currency from Countrywide Bank Account # XXX5890, Nineteen Thousand Nine Hundred Eighty Seven Dollars and Seven Cents ($19,987.07) in U.S. Currency from Comerica Bank Account # XXX0766, Best Buy Bank Account # 259207438, One Hundred One Thousand Seven Hundred and Three Dollars and Ten Cents ($101,703.10) in U.S. Currency from Countrywide Bank Account # XXX5890, Nineteen Thousand Nine Hundred Twelve Dollars and Seven Cents ($19,912.07) in U.S. Currency from Comerica Bank Account**

# XXX0766, Fifty One Thousand Three Hundred Seventeen Dollars and Six Cents ($51,317.06) in U.S. Dollars from Countrywide Bank Account # XXX7528, and Safescript Pharmacy # 19, LLC, Defendants,

and

Stacey Hogan Gianoplos, Ronald G. Carson, and HG Smith Wholesale Drug Company, Inc., Claimants.

No. 08–11564.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 2009.

Tauras N. Ziedas, United States Attorney's Office, Detroit, MI, for Plaintiff.

James W. Burdick, Bloomfield Hills, MI, Arthur W. Miller, Detroit, MI, for Claimants.

### OPINION AND ORDER GRANTING IN PART GOVERNMENT'S MOTION TO STAY PROCEEDINGS

DAVID M. LAWSON, District Judge.

This matter is before the Court on the government's motion to stay this forfeiture proceeding. The government seeks this relief pursuant to 18 U.S.C. § 981(g)(1), which authorizes a stay where discovery in a civil forfeiture case would adversely affect the government's ability to investigate or prosecute a related criminal action. The defendant funds belong to two of the claimants in this case, Stacey Hogan Gianoplos and Ronald G. Carson, owners of a pharmacy that was allegedly involved in illegally furnishing prescription drugs. The other claimant, H.D. Smith Wholesale Drug Company (H.D. Smith), holds a security interest in the subject funds. All three claimants oppose the stay motion. The Court held a hearing on the motion on August 6, 2008, after which it directed the government to file under seal information supporting its claim that permitting discovery will interfere with an ongoing criminal investigation. The Court has reviewed those materials and concludes that the government should be allowed a reasonable amount of time to complete its investigation. However, much time has passed since the investigation commenced, and the Court will allow a stay of only limited further duration. Therefore, the Court will grant the government's motion to stay in part and establish a deadline to allow further proceedings in this case.

### I.

The government commenced this civil forfeiture proceeding against the defendant funds, totaling some $650,000.00, on April 11, 2008. The FBI seized the funds two days earlier, on April 9, 2008. Previously, on May 10, 2007, DEA agents executed search warrants at Safescript Pharmacy in Farmington Hills, Michigan. *See* Case No. 07–51008. In its civil complaint, the government alleges that the seized assets constitute or are derived from proceeds traceable to illegal distribution of controlled substances (in violation of 21 U.S.C. § 841); use of a fictitious registration number in the distribution of controlled substances (in violation of 21 U.S.C. § 843); or money laundering (in violation of 18 U.S.C. § 1956). Therefore, the government reasons, they are forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

According to the amended complaint, the Safescript Pharmacy in Farmington Hills is owned by Safescript Pharmacy # 19, LLC. Stacey Gianoplos is registered with the state as the resident agent of that pharmacy. She is also the wife of Ronald G. Carson, the registered agent of parent corporation Safescript Pharmacies of Michigan, LLC. The government does not allege that Gianoplos and Carson were overtly involved in the prescription scheme; rather, the person driving the scheme supposedly was one George Scott. Scott somehow acquired a prescription pad with Dr. Mohsen Djamali's name on it. Dr. Djamali is registered as a practitioner with the DEA and is assigned DEA # BD9266924. He has the authority to prescribe various controlled substances, including schedule II to schedule V drugs. When DEA agents executed the May 2007 warrant, they found 18 prescriptions written on Djamali's prescription pad. However, these prescriptions bore a different DEA number (BD9374911), and Djamali stated the handwriting was not his. Although the DEA number was valid, it had not been assigned to any person or phar-

macy. The prescriptions (all dated May 8, 2007), called for a total of 1,920 OxyContin pills and 240 Methadone pills.

The government alleges further that after speaking with Dr. Djamali, agents interviewed Safescript pharmacist Richard Riozzi. Riozzi stated that the prescriptions were presented and filled by George Scott. Agents confirmed this statement with Sara Deringer, a pharmacy technician who had the most interaction with Scott. Deringer allegedly explained that Scott told her the prescriptions were for patients at a group home, and he presented patient identification along with the prescriptions. However, Scott paid large quantities of cash, and "[e]vidence seized during the execution of the search warrant indicates that Gianoplos received significant sums of cash in exchange for fulfilling fraudulent prescriptions with the unassigned DEA number." Amend. Compl. at ¶ 8(j). During the time of the prescription scheme, large amounts of cash were deposited in an account at Best Bank, registered to Safescript Pharmacy, Ms. Gianoplos, and Mr. Carson. The government believes that those funds were then transferred to various other accounts in an attempt at money laundering.

Claimants Gianoplos and Carson, answering the amended complaint on May 23, 2008, disputed the forfeiture conclusion and noted that the government had no evidence showing they had knowledge of the illegal activity.

H.D. Smith appeared in this case as a claimant on May 9, 2008, but it did not respond to the forfeiture complaint until June 26, 2008. In its answer, H.D. Smith asserted that it had a "prior, perfected" security interest in the seized assets flowing from Safescript's debt to H.D. Smith in the amount of $540,049.10. H.D. Answer [dkt # 37], at 3. Accordingly, H.D. Smith averred that it was "entitled to immediate possession [of] the collateral securing the debt owed to it which includes the deposit accounts of Safescript # 19 of which the Defendants *in rem* are a part." *Id.* at 4. Along with its answer, H.D. Smith filed a cross-claim against Gianoplos, Carson, and Safescript, and a counterclaim against the government. However, H.D. Smith subsequently agreed to dismiss the counterclaim.

The government filed the present motion to stay on May 29, 2008. Mot. to Stay [dkt # 27]. On June 12, 2008, the Court met with the parties for a scheduling conference. The Court entered an order explaining that formal discovery would await adjudication on the motion to stay. Nevertheless, the Court encouraged the parties to engage in informal discovery in the meantime.

In January, H.D. Smith filed a motion for summary judgment. That motion remains pending.

From the materials furnished by the government, it appears that the government commenced its investigation in the spring of 2006 and arrested Scott in December 2007. As of August 14, 2008, the government's agent averred in an affidavit that she anticipated presentment to a grand jury "soon." The government has not furnished the Court with any additional information since that time.

## II.

■ The government requests a stay of this civil forfeiture proceeding pursuant to 18 U.S.C. § 981(g)(1). That statute is part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), and it directs entry of a stay "whenever a court determines that civil discovery will adversely affect the ability of the United States to investigate or prosecute a related criminal case." *United States v. GAF Financial Servs., Inc.*, 335 F.Supp.2d 1371, 1373 (S.D.Fla. 2004); *see also* 18 U.S.C. § 981(g)(1) ("Upon the motion of the United States,

the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."). When requesting a stay under section 981(g)(1), the "the government must make an actual showing regarding the anticipated adverse affect that civil discovery will have on the criminal investigation." *GAF Financial*, 335 F.Supp.2d at 1373. As to the relatedness of the criminal and civil cases, "neither the parties nor the facts in the civil and criminal case need to be identical for the two cases to be considered related." *Ibid.* (citing *United States v. All Funds Deposited in Account No. 200008524845*, 162 F.Supp.2d 1325, 1329–30 (D.Wyo. 2001)). In contrast to pre-CAFRA proceedings, the government need not file an information or indictment before obtaining a stay. *Ibid.* Generally, the court of appeals reviews a lower court's decision on a stay motion for abuse of discretion. *Alley v. Little*, 447 F.3d 976, 977 (6th Cir.2006).

Section 981 is not an all-or-nothing statute, however. If a court determines that a stay is not warranted but there is still cause for some concern, section 981(g)(3) authorizes entry of a protective order. Subsection (g)(3) provides that

> the court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case. In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so.

18 U.S.C. § 981(g)(3).

■ Based on the information furnished by the government *in camera,* the Court is satisfied that permitting discovery in the present asset forfeiture case may adversely affect the related criminal investigation. The government has indicated that information likely to come to light as relevant to the present proceeding may compromise its ability to establish violations of the controlled substances and money laundering statutes. However, having seized a substantial amount of money, the government is not entitled to protect its information indefinitely. The investigation concerns events that occurred nearly three years ago, and the government's submission does not detail an investigation that is particularly far-reaching or complicated. Therefore, the Court believes that a stay of a limited duration will satisfy the Congressional concern expressed in 18 U.S.C. § 981(g)(1) while allowing the claimants to pursue the return of the seized assets.

### III.

The Court accepts the government's representation that it needs time to complete its investigation, but that time reasonably is drawing to a close. Allowing discovery in the meantime may adversely affect the related criminal investigation, but the danger of that adverse effect will dissipate over time.

Accordingly, it is **ORDERED** that the government motion to stay proceedings [dkt # 27] is **GRANTED IN PART.**

It is further **ORDERED** that proceedings in the present matter are **STAYED** until **June 1, 2009.**